## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

*IN RE:* **WYATT & McALISTER, PLLC**              **CHAPTER 7 PROCEEDING**
                                                  **CASE NO. 09-04354-EE**

### OBJECTION AND RESPONSE TO MOTION TO DISMISS

COMES NOW DEREK A. WYATT, individually, as an interested party and

member in good standing on behalf of WYATT & McALISTER, PLLC (herein "W&M"

or "W&M PLLC"), a professional limited liability company, and files this Objection and

files this Response to the "Emergency Motion to Dismiss Chapter 7 Voluntary Petition"

(herein the "Motion to Dismiss"), filed on or about December 14, 2009, and signed by

Lawrence E. Allison, Jr., as attorney for and behalf of the filing party, Mary McAlister, a

defaulted member of W&M PLLC.

### GENERAL OBJECTION

The Motion fails to assert any legitimate legal or factual ground for dismissal and

as shown in the attached "Affidavit and Supporting Records," is an attempt by McAlister

and her attorney Allison to use the offices of this Court in furtherance of a fraud upon

W&M and its member in good standing, Respondent Derek A. Wyatt.

### RESPONSE

1.      Each and every paragraph and averment of the Motion to Dismiss is

denied except the following averments are admitted: W&M was formed on September

22, 2008; W&M has no limited liability company operating agreement; and

a copy of the W&M certificate of formation is attached to the Motion to Dismiss.

2.      As documented in the attached "Affidavit and Supporting Records,"

signed by W&M member Derek A. Wyatt, the Motion to Dismiss should be denied

and pursuant to Fed. R. Bankruptcy Procedure 9011 and the Court's inherent powers,

costs should be assessed against McAlister and her attorney for frivolous and groundless

filing, and the Motion should be stricken from the Court record as a violation of rules

prohibiting unfounded, absurd and scandalous allegations against filing parties.

3.      As documented in the attached "Affidavit and Supporting Records,"

McAlister willfully violated the "Mississippi Limited Liability Company Act,"

and the following statute therein:

> **Miss. Code Ann. § 79-29-803(1)** – states that the members of an LLC "who
> have *not wrongfully dissolved* a limited liability company, may wind up the
> limited liability company's affairs;" [Italics added].

4.      As documented, McAlister intentionally caused W&M to become

insolvent in direct violation of § 79-29-803(1).  McAlister has no standing to dissolve

W&M or to object to this Chapter 7, while Wyatt, a member in good standing whose

member rights were tortiously violated, does has authority to dissolve and wind up

W&M.

5.      As documented in the attached "Affidavit and Supporting Records,"

McAlister willfully violated the "Mississippi Limited Liability Company Act," including

the following statute therein:

> **Miss. Code Ann. § 79-29-307(3)** – states that unless the certificate or a limited
> liability company agreement provides for withdrawal, "a member *has no power
> to withdraw* from a limited liability company." [Italics added];

6.      As documented, McAlister and her attorney Allision admit, and at all

times had actual and constructive knowledge that W&M had no limited liability

agreement, and that the W&M certificate did not provide for withdrawal.  Despite

knowing this, as a retaliatory act against Wyatt for requesting payment of converted
Katrina fees, and to evade having to fund W&M through an orderly dissolution and wind
up, McAlister and her attorney Allison concocted a facetious "resignation" designed to
render W&M insolvent and cause a default of the Nutt transfer agreement, W&M's
group insurance plan, W&M's equipment lease agreement, its office lease, employee
wage obligations, and other legal commitments binding on the W&M firm and on Wyatt
under personal guarantees.

7.      As documented in the attached "Affidavit and Supporting Records,"
McAlister willfully violated the "Mississippi Limited Liability Company Act," including
the following statutes therein:

> **Miss. Code Ann. § 79-29-101 through 79-29-1201** – contains no provision for a
> member to "resign" from an LLC.

8.      As documented, McAlister and her attorney Allison knew that McAlister
was prohibited from indirectly doing that which she could not do directly – a withdrawal
and abandonment of W&M – especially when the illicit motive was to evade funding and
the orderly winding up and dissolution of W&M.   McAlister's facetious "resignation"
amounts to purposeful evasion of Miss. Code § 79-29-101 *et seq.*,§ 79-29-307(3) and
ethical and legal malpractice.

9.      As documented in the attached "Affidavit and Supporting Records,"
McAlister willfully violated the "Mississippi Limited Liability Company Act," including
the following statute therein:

> **Miss. Code Ann. § 79-29-802, sub-paragraphs (a) and (b)** – vests a member
> with the right to seek judicial dissolution of an LLC when one or more of the
> following events have occurred:

> (a) It is not reasonably practicable to carry on the business in conformity with the

certificate of formation or the limited liability company agreement; or,

(b) The managers or the members in control of the limited liability company have been guilty of or have knowingly countenanced persistent and pervasive fraud or abuse of authority or persistent unfairness toward any member, or the property of the limited liability company is being misapplied or wasted by such persons.

10.    As documented, McAlister and her attorney Allison knew that Wyatt could not carry on business with McAlister after she threatened to retaliate and render W&M insolvent when Wyatt requested payment of Katrina fees converted by her and Nutt.   Being attorneys, McAlister and Allison knew that McAlister had illegally withdrawn to cause W&M to become insolvent, and in essence had grossly violated her fiduciary duties to Wyatt and W&M, as well as the provisions of Miss. Code Ann. § 79-29-802, sub-paragraphs (a) and (b).

11.    Respondent, a member in good standing of W&M, and  an interested party in this Chapter 7 respectfully requests all such general or specific relief to which he is entitled to at law or in equity.

This the 27th day of January, 2010.

Respectfully Submitted,

DEREK A. WYATT, individually, and as a member in good standing of WYATT & McALISTER, PLLC, a Mississippi Professional Limited Liability Company

By:    S/ Derek A. Wyatt, MSB No. 7413
      *Pro Se*

## CERTIFICATE OF SERVICE

The undersigned member of W&M,  an interested party in this Chapter 7 Proceeding, certifies that he has this day caused the above and foregoing pleading or other document to be served by electronic mail or United States Mail, postage prepaid, on the following:

Vann F. Leonard, Esq.
Attorney for Debtor
P.O. Box 16026
Jackson, MS 39236-6026
email: vflaw@bellsouth.net

Greg Faries, Esq.
Attorney for Debtor
P.O. Box 321402
Flowood, MS 39232
email: faries@bellsouth.net

Lawrence E. Allison, Jr., Esq.
Attorney for Mary McAlister
P.O. Drawer 119
Jackson, MS 39205-0119
email: lallison@brunini.com

Eileen N. Shaffer, Esq.
Attorney for Chapter 7 Trustee Stephen Smith
P.O. Drawer 1177
Jackson, MS 39215-1177
email: enslaw@bellsouth.net

Office of the United States Trustee
Attention: Ronald H. McAlpin, Esq.
100 West Capitol Street, Suite 706
Jackson, Mississippi  39269
email: ronald.mcalpin@usdoj.gov

J. Stephen Smith, CPA
Chapter 7 Case Trustee
5 Old River Place, Ste 107
Jackson, Mississippi  39202
email: trustee1@smithcpafirm.com

R. Michael Bolen, Esq.
U.S. Trustee
100 W. Capitol Street, Suite 706
Jackson, MS 39269-1607
email: r.michael.bolen.@usdoj.gov

This the 27th day of January, 2010.

By:    <u>S/ Derek A. Wyatt, MSB No. 7413</u>
       *Pro Se*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

*IN RE:* WYATT & McALISTER PLLC

**CHAPTER 7 PROCEEDING**
**CASE NO. 09-04354-EE**

**STATE OF MISSISSIPPI**
**COUNTY OF MADISON**

### AFFIDAVIT AND SUPPORTING RECORDS

Derek A. Wyatt, being duly sworn, deposed and says:

1.      My name is Derek A. Wyatt.  I am an adult resident citizen of Madison County, Mississippi, residing at 102 Northlake Lane, Madison, MS 39110.

2.      I am over twenty-one years of age, of sound mind, and competent to testify about the matters set out in this Affidavit.

3.      I am an attorney, and member in good standing of the law firm Wyatt & McAlister, a professional limited liability company formed on September 22, 2008, (herein "W&M" or "W&M PLLC").

4.      I am a licensed member in good standing of the Mississippi Bar Association and have practiced law in the state of Mississippi and by *pro hac vice* admission or federal court appointment as MDL liaison counsel, in numerous other federal and state court jurisdictions for approximately twenty-seven (27) years.

5.      I am a qualified as a witness to testify that the Supporting Records attached to this Affidavit and kept in the ordinary course of business of W&M PLLC were made at or near the time by, or from information transmitted by, a person with knowledge.  Further, that it was the regular practice of W&M PLLC to make and keep such records.

6.      Before forming W&M, and during the period 2006-2008, Mary Krichbaum McAlister (herein "McAlister" ) and I worked with the law firm Nutt & McAlister PLLC, a firm majority owned by David Nutt (herein "Nutt").

7.      During this time period, Nutt & McAlister participated in a joint litigation venture known as *In Re Katrina Litigation Joint Venture* (herein, "the Katrina litigation venture"). Over 3,000 policyholders were represented under pure contingency contracts, wherein attorney fees were received only in the event of successful recovery.

8.      At all times pertinent, I had a 10% shared fee interest in the Nutt & McAlister firm's contingency fees in the Katrina litigation venture. (See Exhibit 1, McAlister memo stating in pertinent part "[DW] . . . is entitled to 10% of NET fees . . .").

9.      During this time period, I devoted my entire professional law practice to the Katrina litigation venture, and had no other means of occupational income as an attorney.

10.     On or about April 8, 2008, and *after* Nutt & McAlister PLLC had reaped gross fees in excess of 18 million dollars from the Katrina litigation, Nutt withdrew his firm from the litigation venture, and gave away 685 venture cases and over $600,000 in annuities and cash in a related party transfer drawn up by the Brunini law firm and attorney Allison.

11.     Nutt also announced that he was quitting law practice altogether, and would dissolve his firm Nutt & McAlister PLLC.

12.     Thereafter, McAlister and I discussed and eventually agreed to form a firm and go into law practice together. Given her share of the 18 million in gross revenues from Katrina, McAlister volunteered to fund the new firm until it could cash flow and self-fund.

13.     Since Nutt planned to dissolve the firm and lay off McAlister and I, a deal was negotiated for Nutt to transfer his majority interest in the Nutt & McAlister firm's assets, computers, equipment, data, rights and claims, rather than merely dissolve and wind up the firm. (See Exhibit 2, McAlister's memo detailing Nutt firm property transferred to W&M's offices; and Exhibit 3, partially redacted, McAlister's letter on W&M letterhead to Avandia clients stating in pertinent part "we are in the process of dissolving Nutt & McAlister, and have formed Wyatt & McAlister, PLLC which is handling the Avandia litigation . . .").

14.    McAlister, a minority member of Nutt & McAlister, at all times agreed to, approved and condoned the transfer agreement with the Nutt firm, and induced me to form W&M and enter law practice with her based upon the transfer agreement.

15.    On or about November 1, 2008, W&M commenced business in its newly leased office at 774 Avery Boulevard N., Ridgeland, MS.  Nutt was aware and at all times agreed to, approved and condoned the transfer of assets to W&M's new offices, which cost W&M in excess of $3,000.00 just to move.  To conduct its business, W&M hired Nutt's computer technicians (BCI) and paid over $16,000.00 to install a server and set up all the computers, data, and office equipment transferred pursuant to the agreement with Nutt.

16.    During the months of November and December 2009, W&M (and I as a member in good standing), fulfilled every part of the transfer agreement with Nutt, including the agreement to handle and wrap up Nutt's law firm files unrelated to Katrina on an hourly billing basis.  However, pursuant to an illegal conspiracy with McAlister, Nutt ultimately reneged and breached the transfer agreement.  Additionally, Nutt later cheated W&M by defaulting on payment for hourly work W&M performed on Nutt's files, and invoiced pursuant to the transfer agreement.

17.    At the time W&M PLLC commenced business, Nutt (and McAlister as a minority member in Nutt's firm) owed shared fees to me from the Katrina litigation which they had not paid and as I later learned, had converted.  (See Exhibit 1, McAlister memo stating in pertinent part "Ernie called me . . . about DW's demand letter. . . N&M has about $71-73,000 to offer DW, assuming we retrieve . . . ").[1]

18.    On or about December 19, 2008, I made written legal demand for the unpaid

---

[1]    Though not relevant to the issue before this Court, the converted fees actually owed are greatly in excess of the amount McAlister wrote in her memo.

fees due and owing to me from the Katrina litigation venture, and sent the letter to Ernie

Coward, Nutt's chief financial officer, and to McAlister.

19.    When McAlister realized that I would not acquiesce to strong arm tactics and

simply surrender my share of the unpaid Katrina fees converted by her and Nutt, she, along

with Nutt and the same Brunini attorneys who had approved the transfer agreement and

formation of W&M based upon the agreement, conspired to commit fraud and breach of

fiduciary duty, and intentionally cause the W&M firm to become insolvent.

20.    Thereafter, McAlister made retaliatory threats against me, and, with the

Brunini firm's aid and abetment, engaged in a scheme to illegally withdraw from W&M and

render W&M insolvent.  Among other acts and omissions, McAlister conspired with Coward

(Nutt's CFO) to commit accounting fraud (see Exhibit 1, *supra*); breached her agreement to

fund W&M (see Exhibit 4, wherein McAlister states "I'll need to deposit another $25,000 this

week"); breached the transfer agreement with Nutt; tried to fraudulently convert her capital

contributions on W&M's books to "loans" (see Exhibit 5, McAlister has W&M's bookkeeper

secretly alter W&M's accounting records); attempted to unlawfully seize and remove 90

boxes of W&M case files (see Exhibit 6, highlighted excerpt of letter confirming the

Ridgeland Police intervened and stopped McAlister); tried to secretly tape record me (see

Exhibit 1, *supra*); drained W&M's operating account before her feigned "resignation"and

walk out, causing *inter alia* MESC claims against W&M for unpaid wages; and illegally

withdrew from W&M.

21.    At a time when McAlister was under a strict fiduciary duty and duty of loyalty

to W&M and to me as a member, on December 23, 2008 (four days after my legal demand)

McAlister called Coward and conspired with Coward (and Nutt) to commit accounting fraud

by leaving false accounting entries on Nutt's books, which both McAlister and Coward previously agreed were improperly booked. Coward and McAlister agreed to leave the improperly allocated costs on the Nutt firm's books in order to fraudulently dilute monies owed to me. (see Exhibit 1, McAlister memo stating in pertinent part "I brought up issue of N&M having paid all legal bills for Maria Brown and Doug Mercier. Ernie indicated he does not want to divide those bills among PA, PC and N&M as it would 'increase the amount that Derek would receive'").

22.    In retaliation for my request to pay Katrina fees illegally stripped from me, McAlister depleted W&M's bank account, and illegally withdrew from the firm under a facetious "resignation" letter, causing W&M to become insolvent, and triggering defaults on the firm's vendor contracts, some of which were personally guaranteed by me. McAlister's illicit withdrawal was both a malicious retaliatory gesture against me, and a way to evade the obligation to fund W&M through an orderly and legal dissolution and wind up. The result was to cause W&M to default on its legal obligations, triggering, among other things, (1) the termination of a Blue Cross Group insurance plan; (2) default on a $118,000.00 office lease; (3) default of an $18,000.00 multi-year equipment lease personally guaranteed by me; (4) the filing of MESC claims for unpaid wages; (5) state tax commission warrants and liens against W&M; (6) default on W&M's vendor contracts with Westlaw, Pitney Bowes, BCI, Fed Ex, etc.; and (7) the exclusion of W&M from potentially profitable mass litigation associations in Hurricane Ike litigation with the Lundy & Davis firm; in a California class action against Hewlett-Packard; in an class action online travel case and others.

23.    My experience with McAlister and Nutt is not an isolated incident. McAlister, Nutt and their business associate Richard F. "Dickie" Scruggs are notorious for exploiting and

fee stripping less powerful attorneys as illustrated in a sampling of the cases filed against them: *Jones, Funderburg, et al v. Scruggs, Nutt, Scruggs Law Firm, Nutt & McAlister et al*, Circuit Court of Lafayette County, Civil Action No. L07-135 (Nutt, McAlister and Scruggs fee stripped the Jones firm's share of a $26.7 million dollar Katrina fee; Scruggs went to prison for bribing the judge to send the *Jones* case to arbitration; McAlister and Nutt reimbursed Scruggs for an expense invoice which included for the bribery payment, and approved Tim Balducci's phony invoice created to hide the $40,000.00 bribery, but claimed no knowledge; later, McAlister and Nutt privately settled with Jones for $2 million); *Luckey v. Scruggs et al*, Civil Action No. 1:05-cv-00089, U.S. Dist. Ct., N.D. Miss., (Scruggs was held liable for an award of approximately $17 million in converted fees; on information and belief, Nutt paid 50% of the award); *William Roberts Wilson, Jr. et al v. Scruggs*, No. 251-94-582, Circuit Court of Hinds County, Mississippi, First Judicial District, (Scruggs pled guilty to a new indictment, and ultimately settled Wilson's civil suit for fee stripping); *Pearson v. David Nutt & Associates, P.C., et al*, 2008-IA-01300-SCT, (McAlister and Nutt fee stripped an attorney associated with them in the *Kuhlman* environmental mass tort case; on information and belief, McAlister and Nutt settled); *Mercier v. David Nutt, P.A. et al*, Circuit Court of Hinds County, Mississippi, First Judicial District, Civil Action No. 252-07-000036-CIV, (McAlister and Nutt fee stripped an attorney working with McAlister in Nutt's office, on the *Kuhlman* environmental mass tort case; McAlister and Nutt settled).

24.    I have repeatedly given written notice to the Brunini law firm and its attorneys that they have a conflict of interest in counseling and assisting McAlister in a manner contrary to statutory law, and intended to cause the insolvency of W&M, destruction of my interests, and default on W&M contractual and personal obligations.

25.     Falsely asserting lawyer-client privilege to cover up the scheme to cause W&M to become insolvent, Allison and other Brunini attorneys are bound by the Mississippi Rules of Professional Conduct, existing case law and the crime-fraud exception to the lawyer-client privilege codified as MRE, Rule 502.  (*See e.g., Lach v. Man O'War*, 256 S.W. 3d 563 (Sup. Ct. Ky. 2008) (Attorney-client privilege did not apply to communications between limited partnership, general partners, and their counsel regarding restructuring of partnership into limited liability company (LLC), to extent that communications dealt with, assisted, or furthered a breach of fiduciary duty owed, by general partners or partnership, to plaintiff limited partner); (The "crime-fraud" exception to the lawyer–client privilege as stated in MRE Rule 502(d) provides: "There is no privilege under this rule . . . If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be . . . fraud . . ."); Miss. Rules of Evidence, Rule 502 (d)(1). [Underline added].

**FURTHER AFFIANT SAYETH NOT.**

This the 27th day of January, 2010.

Respectfully submitted,

BY: _____

Derek A. Wyatt, *pro se*

Sworn to and subscribed before me this the 27th day of January, 2010.

_____
Notary Public

My commission expires: _____

12-23-08

Ernie called me, asked me to call Joseph Sclafani about DW's demand letter, his salary, circumstances of hiring him, etc. By Ernie's calculations, N&M has about $71-73,000 to offer DW, assuming we retrieve our interest in the 2 CDs that Don Barrett is trying to keep from us. I brought up issue of N&M having paid all legal bills for Maria Brown and Doug Mercier. Ernie indicated he does not want to divide those bills among PA, PC and N&M as it "would increase the amount that Derek would receive". Ernie will be out of office till 1-5-09.

I then called Joseph, told him DW was raised from $100,000 to $150,000 at some point, that DW fully understood and has admitted to me on numerous occasions that he is entitled to 10% of NET fees, that I'm going to try to record him making that admission.



To: Ernie Coward, Muriel Hannon, Bill Jones
Cc: Ken Lefoldt
From: Meg McAlister
Re: Purchase of Nutt & McAlister stock
Date: November 20, 2008

I understand that we're trying to establish a value for David's 80% interest in N&M by determining the value of N&M's assets and excluding from that valuation those assets that are too difficult or expensive to physically remove or are needed at the Nutt offices. As we've discussed, some of N&M's hard assets, such as computer server equipment, cannot be easily removed from the Nutt office due to ongoing usage by other Nutt entities.  In at least one instance, N&M owns the computer licenses for computer equipment owned by David Nutt & Associates, PC.  Additionally, I have no need for some of N&M's office furniture, and Henry Burkhalter has indicated that he would like to use any furniture I leave behind.

Therefore, I understand that we will subtract the value of N&M assets that I leave behind to arrive at the value of David's interest in N&M.  To that end, this memo attempts to list all substantial assets that I wish to acquire, and all substantial assets that will be left at the Nutt office.  Muriel gave me copies of all invoices for hard assets purchased by or charged to N&M that she could find, but it is not a complete set of all such invoices.

<u>Items I want to acquire:</u>

1.     All desktop computers, monitors, and all associated hardware, software, and licenses except those left behind as noted below.

    (14) <u>Monitors I'll take:</u>
    a.  HU24HVZP406637 (located at W&M, workroom) (have invoice)
    b.  HU24HVZP406731X (located at W&M, Beth's) (have invoice)
    c.  HU24HVZP406575P (located at W&M, spare) (have invoice)
    d.  HU24HVZP406642N (located at W&M, spare) (have invoice)
    e.  HU24HVLP701482N (located at W&M, Judy's) (have invoice)
    f.  HU24HCGPC02938W (Located at WM – Melinda) (have invoice)
    g.  CNK80811YS (located at W&M, Derek's) (have invoice)
    h.  HU24HVLP600128E (located at W&M, Meg's)
    i.  GY19H9NX233312J (located at W&M, spare)
    j.  HU24HVLP600070N (located at W&M, spare)
    k.  AU3A0619035534 (located at W&M, spare)
    l.  AU3A0642007142 (located at W&M, spare)
    m.  BZ000417326044 (located at W&M, spare)
    n.  AU3A061600573 (located at W&M server room)



1

Monitors left behind:
a. SCNC701Q64Z (19" monitor on server in attic @ Nutt used by BCI) (have invoice)
b. HU24HVZP406576 (Bill Jones') (have invoice)
c. HU24HVLP701675N (Chris E's)
d. HU24HVZP406653 (Debbie's) (have invoice)

(14) Computers I'll take:
a. 2UA7310HSY (located at W&M, Beth's) (have invoice)
b. 2UA7310PXV (located at W&M, Meg's)  (have invoice)
c. MXL7420H2Q (located at W&M, Judy's) (have invoice)
d. MXL7230349 (located at W&M, Melinda's)
e. 2UA648101B (located at W&M, Derek's)
f. MXM6200205 (located at W&M, workroom)
g. 2UA7310PXP (located at W&M, spare) (have invoice)
h. 2UA7310HSW  (located at W&M, spare)
i. 2UA7310HSQ  (located at W&M, spare)
j. 2UA7310HSL  (located at W&M, spare)
k. 2UA4230D64 (old)  (located at W&M, spare)
l. MXL7480KRK (located at W&M, spare) (have invoice)
m. 2UB41440460 (old) (located at W&M, spare)

Desktop computers left behind:
a. MXL6300DXT (Chris Etheridge's)
b. 2UA4110C47 (Bill Jones')


2. Five laptops and attendant hardware/software/licenses:
a. CNU6490092 (Derek's old laptop w/bad screen)
b. 2T730PNT9X49ATP (Charlene's old laptop)
c. SCNU73011GM (Meg's laptop) (Also EN488AA Docking station) (have invoice)  Do we have the docking station
d. CNU7381ZQZ (Derek's current laptop – was Sue's laptop) (have invoice) (en488ut#ABA – DOCKING STATION)
e. KRD441010B (Meg's old laptop)


3. 13 desktop printers:

a. CNGXC50740 (located at W&M, Meg's)
b. CNRXJ92751 (located at W&M, Beth's) (have invoice)
c. CNJ2R02207 (located at W&M, Melinda's)
d. CNRXS27844 (located at W&M, Judy's)
e. CNRXS18687 (located at W&M, Derek's) (have invoice)
f. CNGJF55064 (located at W&M, workroom)
g. CNBM060667 (located at W&M, spare)

      h.  CNGRF07289 (located at W&M, spare)
      i.  CNBRJ20040 (located at W&M, spare)
      j.  USQA008259 (located at W&M, spare)
      k.  TH4421322N (located at W&M, spare)
      l.  Small color printer - located at Beth's house
      m.  CNGJF54988 (located at W&M, spare) – melinda has

4.      Two cell phones:  (The billing has been switched to WM)
      Derek's – 601-954-1140
      Mine – 601-506-9125

5.      All furniture except the furnishings from the offices used by Beth, Judy and Jolie;

6.      All law books (most of the hardback books have 2008 pocket parts, all of which was paid for during past year);

7.      Judy's Poppy picture (this was a print that Allison had framed when she decorated the office; it hung in Judy's office and she brought it with her to our new office).

With respect to **N&M computer equipment in the attic at the Nutt office**, I understand that:

1.      The original Condos server bought by N&M was transferred to Barrett Law Office when we pulled out of Katrina Litigation Group; N&M bought a replacement server for which I have no invoice.  The replacement server is incorporated into the Nutt computer system; BCI advises that it would be prohibitively expensive and time consuming to remove it;

2.      E-mail extender file server, software and programming costs – BCI advises it would be too disruptive and expensive to remove and replace;

3.      Equallogic server and associated hardware, software, licenses and programming costs purchased for Katrina document repository – too disruptive and expensive to remove;

4.      Wireless LAN controller #SJMX1131KOTB; BCI advises it would be too disruptive and expensive to remove and replace; (have invoice)

5.      64MB USB PSVR, #SCNRXS18687 – this is some kind of server, currently in use in the attic; again, too expensive/disruptive to remove; (have invoice)

I'll keep some computer licenses such as Adobe Acrobat standard licenses that are loaded on computers I'm acquiring.  There are other computer licenses that I cannot use because they're either tied to N&M computers I'm leaving behind or tied to computer equipment owned by some other Nutt entity.

The following items are invoiced to N&M, but I do not have them:

MONITORS:

|  | Invoice # | Date |  |
|---|---|---|---|
| HU24HCKP501330 | INV0009974 | 08/31/07 |  |
| HU24HVZP406824 | INV0009974 | 08/31/07 |  |
| HU24HVZP406647 | INV0009974 | 08/31/07 |  |
| HU24HCGP802291 | ?? | 10/05/07 |  |
| EF224A8 UNKNOWN | INV0008920 | 03/27/07 | (S/N UNKNOWN) |

DESKTOPS:

| 2UA7310PXQ | INV0009974 | 08/31/07 |
|---|---|---|
| 2UA7310PXR | INV0009974 | 08/31/07 |
| 2UA7310PXS | INV0009974 | 08/31/07 |
| 2UA7310PXT | INV0009974 | 08/31/07 |
| SCNK6510LPH | INV0008920 | 03/27/07 |

PRINTERS:

| SCNRXL60385 | ?? | 10/05/07 |
|---|---|---|

4

# WYATT & McALISTER PLLC
## ATTORNEYS
~
*a professional limited liability corporation*

DEREK A. WYATT

MARY E. McALISTER
*also licensed in Louisiana*

November 21, 2008



Fayette, MS  39069

      Re:  Your potential Avandia claim

Dear Sir or Madame:

In response to your inquiry about your potential personal injury claim against GlaxoSmithKline, the manufacturer of the diabetes drug Avandia® (rosiglitazone), Avandaryl, and/or Avandament, Nutt & McAlister, PLLC previously sent you a packet of documents necessary to evaluate your claim.   However, we have not received the completed documents from you and are concerned that your claim, if any, may soon be time-barred by the applicable statute of limitations unless suit is timely filed.

To expedite this matter, we are enclosing another Client Questionnaire, Medical Authorization, and a Retainer Contract for you.  Please note that we are in the process of dissolving Nutt & McAlister, and have formed Wyatt & McAlister, PLLC which is handling the Avandia litigation in association with the law firm of Beasley, Allen, Crow, Methvin, Portis & Miles, PC of Montgomery, Alabama.

If you wish to retain our services as your attorneys, please complete and sign all enclosed documentation and return it to our office as soon as possible so we can investigate your potential claim.  To assist us, we ask that you also provide proof of your Avandia usage.  Please send us your pharmacy records to document your use of Avandia, along with your Client Questionnaire, Medical Authorization and Retainer Contract.  You can obtain a pharmacy printout from the pharmacy where you fill or filled your Avandia prescription.

Thank you for giving us the opportunity to investigate your potential claim, and please let us know if you have any questions.

Sincerely yours,

*Mary E. McAlister*

Mary E. McAlister
Wyatt & McAlister, PLLC

Encls.



**Melinda Gantt**

| | |
|---|---|
| **From:** | Meg McAlister |
| **Sent:** | Monday, December 29, 2008 3:26 PM |
| **To:** | Melinda Gantt; Derek Wyatt |
| **Subject:** | RE: Bank Balance; Upcoming bills |

Melinda - I don't think we should pay Xfone a penny until they fix the phone system.  I'll need to deposit another $25,000 this week.  We also need to lean on Nutt's office to pay our November invoice for all the Kuhlman work. Would you please call Muriel to find out if they intend to pay the invoice before the end of this year?

*Mary E. McAlister, Esquire*

**WYATT & MCALISTER, PLLC**
**774 AVERY BLVD. NORTH**
**SUITE C**
**RIDGELAND, MS 39158**
**TOLL FREE: 866-983-1550**
**PHONE: 601-983-1550**
**FAX: 601-983-1551**

The information contained in this electronic mail transmission (including any accompanying attachments) is intended solely for its authorized recipient(s), and may be confidential and/or legally privileged. If you are not an intended recipient, or responsible for delivering some or all of this transmission to an intended recipient, you have received this transmission in error and are hereby notified that you are strictly prohibited from reading, copying, printing, distributing, or disclosing any of the information contained in it.  In that event, please contact me immediately by telephone at (601) 983-1550 or by electronic mail at mcalister@wyattmcalister.com and delete the original and all copies of this transmission (including any attachments) without reading or saving in any manner. Thank you.

**From:** Melinda Gantt
**Sent:** Monday, December 29, 2008 3:18 PM
**To:** Meg McAlister; Derek Wyatt
**Subject:** Bank Balance; Upcoming bills

Bank balance as of 12-29-08:    $10,793.41

| Upcoming bills: | | |
|---|---|---|
| continue to hold? | $5332.91 | Payroll 12/31/08 |
| | $1073.03 | Xfone – due 01/02/09 - do you want to go ahead and pay this or |
| | $400.00 | Pitney Bowes – postage |
| | $320.27 | WGS Leasing – copier lease |
| | $1820.24 | 1/15/08 Federal Tax Deposit |
| | $257.00 | State tax payment for payroll deposit |

Thank you,
*Melinda*

Melinda C. Gantt, Legal Assistant

Wyatt & McAlister, PLLC


EXHIBIT
"4"

3/18/2009

**Melinda Gantt**

**From:** Meg McAlister
**Sent:** Tuesday, January 06, 2009 10:13 AM
**To:** Melinda Gantt
**Subject:** RE: Due to MM.xls

Thanks!

*Mary E. McAlister, Esquire*

WYATT & MCALISTER, PLLC
774 AVERY BLVD. NORTH
SUITE C
RIDGELAND, MS  39158
TOLL FREE: 866-983-1550
PHONE: 601-983-1550
FAX: 601-983-1551

The information contained in this electronic mail transmission (including any accompanying attachments) is intended solely for its authorized recipient(s), and may be confidential and/or legally privileged. If you are not an intended recipient, or responsible for delivering some or all of this transmission to an intended recipient, you have received this transmission in error and are hereby notified that you are strictly prohibited from reading,copying, printing, distributing, or disclosing any of the information contained in it.  In that event, please contact me immediately by telephone at (601) 983-1550 or by electronic mail at mcalister@wyattmcalister.com and delete the original and all copies of this transmission (including any attachments) without reading or saving in any manner. Thank you.

**From:** Melinda Gantt
**Sent:** Tuesday, January 06, 2009 10:10 AM
**To:** Meg McAlister
**Subject:** Due to MM.xls

I went ahead and changed it to "Loan".  Thanks.

tabbies'

EXHIBIT

"5"

Meg McAlister
Wyatt & McAlister, PLLC
774 Avery Boulevard North
Ridgeland, MS 39157

**Re:**    ***Demand for Accounting and Payment of Unpaid Katrina Case Fees; Trespass
and Unauthorized Removal of Files and Property from Wyatt & McAlister Law
Office; Resignation of Meg McAlister from Wyatt & McAlister; Wrongful
Dissolution of Wyatt & McAlister, PLLC.***

Dear Meg:

On Friday January 9, 2009, at approximately 3:30 PM, David Nutt's hired hands
showed up, entered the firm's office without a word to me, and began removing some 90
plus bankers boxes of client files. Earlier in the day emailed a purported letter of
resignation from the firm, effective 5:00 PM, stated you were ill, and quietly left the
premises before the hired hands' arrival.

By the time I realized what was happening, it became apparent that you, acting in
concert with David Nutt and his attorneys from the Brunini firm, had secretly enlisted
Wyatt & McAlister's own employees to assist in carrying out the unauthorized entry and
illicit file removals. I am now given to understand that in advance of this incident, you
and David Nutt, perhaps with the aid of the Brunini attorneys, may have induced some of
Wyatt & McAlister's employees to terminate or otherwise alter their employment with
Wyatt & McAlister.

All of this was conducted without you, David Nutt, the Brunini attorneys, or our
own firm employees uttering a word to me about what had been planned. All of this is
severely damaging to Wyatt & McAlister as a firm, and to me personally.

As you know, the City of Ridgeland police had to intervene and order Nutt's
hired hands to return the files to the office, to leave and not return to the premises. One
of the hired hands (apparently named "Jake") uttered threatening comments during the
incident. His driver's license was obtained by the investigating officer and called in to
the department as part of the incident record.

It is now obvious to me (and as well, to the investigating police authorities) that
this was a calculated show-of-force, intended to intimidate me and further impede my
efforts to collect unpaid Katrina fees you and the Nutt entities continue to wrongfully
withhold.

I am writing this letter to make a record of the events leading up to the trespass of
and unauthorized file removal, all of which is not only unprofessional, but tortiously
retaliatory and illegal. In the weeks and days leading up to Friday's events, you have
taken calculated steps to tortiously to damage my interest in Wyatt & McAlister, and the

