IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:     CHAPTER 7

WYATT & McALISTER, PLLC,     CASE NO. 09-04354-EE
DEBTOR

## MEMORANDUM OF MARY McALISTER
## IN SUPPORT OF MOTION TO DISMISS

MARY McALISTER ("McAlister") submits this memorandum in support of her "Emergency Motion to Dismiss Chapter 7 Voluntary Petition" ("Motion") [Dkt #6].

### Introduction

On December 10, 2009, Derek Wyatt ("Wyatt"), a 50% member of Wyatt & McAlister, PLLC ("W&M"), commenced this case by filing a Voluntary Petition ("Petition") [Dkt #1] on behalf of W&M under the provisions of Chapter 7 of the Bankruptcy Code.  However, Wyatt did not have the requisite authority to file the Petition on behalf of W&M.  Accordingly, on December 14, 2009 McAlister, who is the other 50% member of W&M, filed her Motion requesting the Court to dismiss this case.

By her Motion, McAlister also requested this Court, pursuant to Bankruptcy Rule 9011 and/or the Court's inherent powers, to sanction Wyatt and/or the Debtor's counsel of record because:  (a) they filed the Petition without having the requisite authority to do so; (b) Wyatt falsely certified, under penalty of perjury, that he had had been authorized to file the Petition on behalf of W&M; and (c) this case was filed for improper purposes.

The Motion was set for hearing on March 5, 2010.  At the hearing, the Court announced that it would bifurcate its consideration of the relief requested by the Motion, and that it would

decide the request for dismissal first. The Court further announced that it would retain jurisdiction to decide the request for sanctions after an order ruling on the request for dismissal becomes final. Therefore, pursuant to the Court's direction, this Memorandum will address only the issues pertaining to the request for dismissal. For the reasons discussed below, McAlister's request that this case be dismissed should be granted.

## Background Facts

The issue presented by McAlister's request for dismissal is whether Wyatt had the requisite authority to initiate this bankruptcy proceeding on behalf of W&M. The facts that are relevant to that issue are relatively simple and straightforward. In that connection, McAlister prefaces her discussion of the background facts by noting that multiple extraneous controversies presently exist between Wyatt and her, as well as between Wyatt and other parties, and that the facts that are relevant to those extraneous controversies are more complex. However, they have no relevance whatsoever to the simple issue of whether Wyatt had the requisite authority to file the Petition on behalf of W&M – which is the only issue now before this Court.

Prior to the formation of W&M, McAlister and Wyatt both practiced law with the law firm of Nutt & McAlister, PLLC. McAlister was one of that firm's two members. David Nutt ("Nutt") was the other member. Wyatt was not a member of Nutt & McAlister, PLLC, and his status with respect to that firm and other issues related to his association with that firm are now the subjects of litigation pending in Madison County and in Lafayette County.[1]

---

[1] Wyatt's status while working for Nutt & McAlister, PLLC and other related issues are currently the subjects of an action filed in the Chancery Court of Madison County, Mississippi, on February 19, 2009, styled *David Nutt, P.A.; David Nutt & Associates, P.C., f/k/a David Nutt & Associates, P.A.; and Nutt & McAlister, PLLC vs. Derek A. Wyatt*, Civil Action No. 2009-258. Those issues are also the subjects of a subsequently filed action pending in the Circuit Court of Lafayette County, styled *Derek A. Wyatt vs. Richard F. "Dickie" Scruggs; David H. Nutt; Mary Krichbaum McAlister, a/k/a "Meg" McAlister; SLF, Inc., formerly the Scruggs Law Firm, P.A.; Nutt & McAlister, P.L.L.C.; David Nutt, P.A.; David Nutt & Associates, P.C.; and John/Jane Does 1-25*, Civil Action No. L09-260.

With respect to W&M and the issue before this Court, the sequence of events that ultimately led to this bankruptcy case began in the latter part of 2008, while Wyatt was associated with Nutt and McAlister, PLLC. At that time, David Nutt decided that he wished to cease practicing law. Therefore, Nutt and McAlister began the task of concluding the open files and business of Nutt & McAlister, PLLC. McAlister and Wyatt decided to continue to practice law together, and they formed W&M for that purpose. W&M was formed on September 22, 2008.[2/] On October 15, 2008, Wyatt's employment relationship with Nutt & McAlister, PLLC was terminated. Although the open business of Nutt & McAlister, PLLC had not yet been completed, McAlister left that firm at that time to begin practicing law with Wyatt in W&M.

Soon thereafter, controversies arose between Wyatt and Nutt & McAlister, PLLC concerning a claim by Wyatt for compensation he contended he was owed for work he performed while employed by that firm. By early January, 2009, those controversies between Wyatt and Nutt & McAlister, PLLC had escalated. Because McAlister was a member of Nutt & McAlister, PLLC, and for other reasons, it had become apparent to McAlister that she and Wyatt could no longer work together. Therefore, on January 8, 2009, she wrote to Wyatt to inform him that she had decided to resign her employment as an attorney with W&M effective Friday, January 9, 2009, at 5:00 p.m. ("Employment Resignation Letter")[3/] By that letter, she also requested that Wyatt contact her attorneys "to work out a mutually agreeable voluntary dissolution of [W&M], and a winding up of its affairs." (Exhibit 2, Employment Resignation Letter) She also informed Wyatt that "[u]ntil we can reach an agreement on dissolution, I will

---

[2/] A true and correct copy of W&M's Certificate of Formation was admitted into evidence at the hearing on March 5, 2010, as Exhibit 1. A copy is attached hereto for the convenience of the Court.

[3/] A true and correct copy of McAlister's Employment Resignation Letter was admitted into evidence at the hearing on March 5, 2010, as Exhibit 2. A copy is attached hereto for the convenience of the Court.

- 3 -

maintain my 50% equity interest in [W&M], which includes an interest in all attorneys' fees that [W&M] may recover in connection with any current or future firm business." *Id.*

However, Wyatt did not contact McAlister's attorneys to discuss a voluntary dissolution of W&M. Instead, on January 16, 2009, he filed an Application for Judicial Dissolution in the Chancery Court of Madison County, Mississippi, requesting the court to judicially dissolve W&M (the "Dissolution Proceeding").[4/] Although it is obvious that both Wyatt and McAlister sought the dissolution of W&M, the Dissolution Proceeding has been unduly prolonged as a result, primarily, of controversies concerning the true ownership of certain assets that are claimed by Wyatt to be owned by W&M, and that are claimed by McAlister and David Nutt to be owned by Nutt & McAlister, PLLC and/or other entities in which David Nutt owns interests.

Subsequently, by an order entered in the Dissolution Proceeding on May 29, 2009, the Chancery Court appointed a Special Master, and referred all motions to him. On November 11, 2009, the Special Master conducted an evidentiary hearing to determine the assets of W&M. The purpose of that hearing was to determine whether the disputed assets are, in fact, owned by W&M, as Wyatt claims, or whether they are owned by Nutt & McAlister, PLLC and/or other entities in which David Nutt owns interests, as McAlister and David Nutt contend.

With respect to the November hearing, it should be noted that Wyatt had vacated W&M's former offices prior to the hearing.[5/] When he vacated the premises, he took some, but not all, of the disputed property to his residence, and left the remainder on the premises. The owner/landlord of the premises, Carousel Development LLC ("Carousel"), claimed a landlord's

---

[4/] The Dissolution Proceeding is Civil Action No. 20090-90-B on the docket of the Chancery Court of Madison County, Mississippi.

[5/] Wyatt apparently contends that the business of W&M ended on January 9, 2009. (*See* Statement of Financial Affairs [Dkt #33], ¶18a; and Statement of Financial Affairs – Amended [Dkt #59], ¶18a) However, McAlister understands that Wyatt remained in possession of the former offices of W&M (while operating a newly formed professional limited liability company named "Wyatt Law Firm PLLC") until approximately August 1, 2009, when he vacated the premises.

lien on the property that was left on the premises.  Therefore, Carousel had intervened in the Dissolution Proceeding and its attorney actively participated in the hearing.

At the conclusion of the hearing, the Special Master requested the parties to submit post-hearing briefs.  On December 8, 2009, six days before the briefs were due, the attorney for Carousel contacted the attorneys for McAlister.  She informed them that as a result of the hearing Carousel had concluded that W&M had no valid claim to the property remaining in W&M's former offices and, therefore, that it was no longer asserting a landlord's lien on that property.  Accordingly, she requested that the Nutt entities make the arrangements necessary to remove the property as soon as possible.

On December 10, 2009, McAlister's attorneys notified the Special Master and Wyatt's attorney of record in the Dissolution Proceeding of Carousel's request, and informed them that arrangements had been made to remove all property that remained on the premises.  They further informed the Special Master and Wyatt's counsel of record that the property would be removed on December 14, 2009, and that it would be stored securely in David Nutt's offices pending a decision by the Special Master and the Chancery Court as to the ownership of the property.

On the same day that Wyatt's counsel of record was notified of Carousel's decision and request, Wyatt filed the Petition commencing this case.  However, he filed the petition without conferring with McAlister, W&M's other member, and without her consent or knowledge.  He certified, erroneously, that he had authority to act on behalf of W&M in doing so.   When McAlister learned that the Petition had been filed, she filed her Motion requesting this Court to dismiss this case.

**Argument**

*A.  The Mississippi Limited Liability Company Act*

W&M is a Mississippi professional limited liability company, and its business purpose is the general practice of law.  It was formed under, and is governed by, the Mississippi Limited Liability Company Act, Miss. Code Ann. §§77-29-101, *et seq*, including those provisions contained in Article 9 of the Act that are applicable only to professional limited liability companies, *Id.* at §§79-29-901, *et seq*.  (The Act will sometimes be referred to hereafter as the "MLLCA.")

A limited liability company is a relatively new type of entity.  It has the best features of a partnership and a corporation.  It provides its owners a corporate-styled shield from liability, while providing them a partnership's pass-through tax treatment.  Wyoming enacted the first limited liability company legislation in 1977.  It was followed by Florida in 1982.  However, for a number of years few other states enacted limited liability company legislation because federal tax laws created uncertainties as to whether this new type of entity would be treated as a corporation or a partnership for tax purposes.  After the tax issues were resolved, ensuring limited liability companies partnership tax treatment, other states rapidly enacted limited liability company legislation.[6]

The National Conference of Commissioners on Uniform State Laws adopted the first Uniform Limited Liability Company Act in 1994.  However, by then nearly every state had already adopted a limited liability company act, and those acts varied considerably in both form

---

[6]  *See, e.g.,* 6A Uniform Laws Annotated, Uniform Limited Liability Company Act (1966) (Thompson – West 2003), Prefatory Note, p. 554; and MARK A. SARGENT AND WALTER D. SCHWIDETZKY, LIMITED LIABILITY COMPANY HANDBOOK (West, Securities Law Handbook Series, 2009-2010 Edition), §§1:2 and 2:1-2:4.

- 6 -

and substance.[7/]  The first Uniform Act, adopted in 1994, was not widely adopted.  The first act was revised in 1996.  It was revised again in July, 2006, when the current version of the Uniform Act was adopted.  However, like the earlier versions of the act, it has not yet been widely adopted.[8/]

Mississippi adopted the Mississippi Limited Liability Company Act in March, 1994, prior to the adoption of the first Uniform Act later that same year.  The MLLCA was drafted by the Mississippi Secretary of State's Business Advisory Group (the "Group").  In drafting the MLLCA, the Group utilized provisions of the Mississippi Limited Partnership Act and provisions of the Mississippi Business Corporation Act.  The Group was also guided by the Prototype Limited Liability Company Act (draft of July 16, 1992) drafted by the American Bar Association's Section on Business Law, the Virginia LLC act (Va. Code Ann. §§13.1 – 1000 to – 1072 (Michie 1994)), and various other state limited liability company acts.[9/]  Although various provisions of the MLLCA, as originally enacted in 1994, have since been amended, Mississippi has not adopted any version of the Uniform Act.  Therefore, while individual provisions of the MLLCA may be identical, or similar, to corresponding provisions contained in one of the versions of the Uniform Act, or to corresponding provisions contained in acts adopted by other states, the MLLCA is unique to Mississippi.

### B.  Wyatt Did Not Have Authority to Initiate Bankruptcy Proceedings on Behalf of W&M

Limited liability companies are not mentioned in the Bankruptcy Code.  State statutes creating such entities did not exist at the time the Code was drafted.  However, there is no

---

[7/]    *See, e.g.,* 6A Uniform Laws Annotated, Uniform Limited Liability Company Act (2006) (Thompson – West) (Cum. Supp. 2008), Prefatory Note, p. 362; *see, also,* SARGENT AND SCHWIDETZKY, *supra* note 6, §§1:2 and 3:110.

[8/]    *See* SARGENT AND SCHWIDETZKY, *supra* note 6, §§1:2 and 3:110.

[9/]    James A. McCullough, II and L. Bradley Dillard, *The Mississippi Limited Liability Company: A New choice for Mississippi*, 64 Miss. L.J. 117, note 1 (Fall 1994).

dispute that they are "persons" eligible for relief under the Code.[10] In that connection, an important feature of a limited liability company is that it is owned by members, rather than partners or shareholders. Further, the members enjoy the same general limited liability benefit that is afforded to shareholders of a corporation. Although a few bankruptcy courts have analogized members of a limited liability company to partners, a limited liability company is not a partnership and its members are not general partners.[11]

It is well established that the determination of who has the authority to initiate a bankruptcy proceeding on behalf of a corporation is governed by applicable state law. Therefore, the source of authority to file a voluntary petition on behalf of a corporation is derived from applicable state laws, the corporation's certificate of incorporation and the corporation's by-laws.[12] Similarly, the determination of who has the authority to initiate a bankruptcy proceeding on behalf of a limited liability company is governed by state law.[13] Therefore, the source of authority to file a voluntary petition on behalf of a limited liability company is derived from applicable state laws, the certificate of formation and the entity's limited liability company agreement.[14]

W&M's Certificate of Formation reflects that no part of its management is vested in a manager or managers. Therefore, W&M is managed by its members. Miss. Code Ann. §79-29-302 The Certificate of Formation also reflects that W&M has two members -- Wyatt and McAlister. Each member of W&M is entitled to one vote on any matter entitled to be voted on

---

[10] *See* 2-303 Collier on Bankruptcy, ¶303.17[7] (2009).

[11] *Id.*

[12] *See* 2-301 Collier on Bankruptcy, ¶301.04[[b] (2009).

[13] *Id.* at ¶301.04[c].

[14] A liability company agreement (commonly referred to as an "operating agreement") is defined by the MLLCA as, "an agreement of the members as to the affairs of a limited liability company and the conduct of its business." Miss. Code Ann. §79-29-103. It is undisputed that W&M does not have a limited liability company agreement.

by the members. *Id.* at §79-29-304(1)  Any action that is required or permitted to be taken by the members may be taken upon a majority vote of all of the members. *Id.* at §79-29-304(2)  In construing similar governance provisions contained in the Louisiana limited liability company statutes, the United States Bankruptcy Court for the Eastern District of Louisiana held, "the Court concludes that a petition in bankruptcy must be authorized by a majority of the members, unless the articles of organization or the operating agreement specifically provides otherwise." *In re: Delta Starr Broadcasting, L.L.C.*, 2006 WL 285974, at *4 (E.D. La. 2006)

It is clear that commencement of this bankruptcy proceeding on behalf of W&M required a majority vote of its members. Because W&M has only two members, and because each of its two members is entitled to one vote, it is equally clear that no such authority could have existed without McAlister's affirmative vote. When Wyatt filed the Voluntary Petition, he did so without conferring with McAlister, without her consent, and even without her knowledge. Then, he falsely certified that he had been authorized to file the Petition.[15/] Wyatt had no authority to file the Voluntary Petition on behalf of W&M. Therefore, this bankruptcy case must be dismissed.

Nevertheless, both Wyatt and the attorney he retained to act as counsel of record for W&M filed responses to McAlister's Motion. (*See* Debtor's Response [Dkt #8], and Wyatt's Objection and Response [Dkt #43])  Although their responses are not clear, they appear to argue that McAlister is no longer a member of W&M and, therefore, that Wyatt was entitled to act unilaterally when he filed the Voluntary Petition. Their arguments ignore the facts and the applicable provisions of the MLLCA. Their arguments are patently erroneous. McAlister is, and has been since its formation, a member of W&M.

---

[15/]  Voluntary Petition [Dkt #1], at page 3. (Wyatt certified, "I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.")

They first argue that McAlister's resignation of her employment as an attorney with W&M somehow constituted a voluntary termination of her ownership interests. This is simply not correct, either factually or legally. In her Employment Resignation Letter, McAlister affirmatively stated that, "[u]ntil we can reach an agreement on dissolution, I will maintain my 50% equity interest in [W&M]…." Had Wyatt and McAlister entered into an operating agreement, they could have agreed that each of the members would be required to be employed as an attorney for W&M, and that a member's resignation of such employment would also constitute a voluntary termination of such member's ownership interest in the firm. However, they did not enter into such an agreement. Therefore, the issue is governed by the provisions of the MLLCA, which expressly provide, "[u]nless the certificate of formation or limited liability company agreement provides that a member has the power to do so, *a member has no power to withdraw from a limited liability company*." Miss. Code Ann. §79-29-307(3) (Emphasis added)[16]/ Accordingly, even if McAlister had intended that the resignation of her employment as an attorney for W&M should also effect her voluntary withdrawal as a member of W&M, the provisions of Section 79-29-307(3) would have prevented her from voluntarily withdrawing.

Both respondents also appear to argue that McAlister is somehow responsible for W&M's insolvency. Although neither of them explains how she rendered W&M insolvent, McAlister is well aware that Wyatt has argued in the past that she verbally agreed to provide unlimited funding for the operations of W&M. That allegation is, of course, absurd. However,

---

[16]/   McAlister notes that the quoted provision was added to the MLLCA by an amendment to Section 79-29-307(3) that became effective on July 1, 1998. Prior to the amendment, Section 79-29-307(3) provided that, "[u]nless the certificate of formation or limited liability company agreement provides in writing that a member has no power to withdraw by voluntary act from a limited liability company, the member may do so at any time by giving thirty (30) days' written notice to the other members." (After such withdrawal, the member was entitled to receive the fair value of his interest in the limited liability company, based upon his right to share in distributions. *See* Miss. Code Ann. §79-29-602.) However, the amendment to Section 79-29-307(3) eliminated a member's right to voluntarily withdraw. Today, the statute provides that unless the certificate of formation or operating agreement grants a member the power to withdraw from a limited liability company, the member has no power to do so.

- 10 -

even if McAlister had been so unwise as to agree to provide unlimited funding, the agreement would be unenforceable.  The governing provision of the MLLCA expressly provides that, "[a] promise by a member to contribute to the limited liability company is not enforceable unless set out in a writing signed by the member."  *Id.* at §79-29-502.

Further, and perhaps more to the point, even if McAlister had somehow caused the insolvency of W&M, there is no provision in the MLLCA that would have resulted in the termination of her membership for having done so.  In fact, the MLLCA specifies the events that will cause the termination of a member's interest in a limited liability company, unless other events are added by the certificate of formation or an operating agreement.  In that connection, a "member" of a limited liability company is defined as a person that has been admitted to the entity, and that has not dissociated from the entity.  *Id*. at §79-29-103(n).  An "event of dissociation" is defined as an event that causes a person to cease to be a member, as provided in Section 79-29-307.  *Id.* at §79-29-103(g)

The "events of disassociation" are identified in Section 79-29-307(1), which provides that, "[a] person ceases to be a member of a limited liability company upon the occurrence of one or more of the following events …."  The list of events is quite specific, and none of such events have occurred here.  Section 79-29-307(2) further provides that the certificate of formation or limited liability company agreement may provide for other events the occurrence of which result in a person ceasing to be a member of the limited liability company.  Of course, W&M's Certificate of Formation does not provide for other events of disassociation, and W&M does not have an operating agreement.  Therefore, the statutory listing constitutes the complete list of "events of disassociation."  There have been no such events in this case.  Finally, as discussed above, Section 79-20-307(3) provides that unless the certificate of formation or operating

- 11 -

agreement provides that a member has the power to withdraw from the limited liability company, the member has no power to do so. None of the facts alleged in the response filed by the Debtor's counsel of record or in the response filed by Wyatt constitute an event of disassociation as provided by the statute, and the MLLCA would have prevented a voluntary withdrawal by McAlister even if she had wished to do so. McAlister is a member of W&M.

McAlister notes that even the record in this bankruptcy case demonstrates that she is a member of W&M. For example, the "Corporate Ownership Statement" [Dkt #34] filed in this proceeding reflects that both Wyatt and McAlister own 10% or more of W&M's equity interests. Further, Wyatt admitted in the §341 meeting that was conducted on January 21, 2010, that McAlister is a member of W&M. His admission is evidenced by the "Proceeding Memo and Minutes of The Chapter 7 §341(a) Meeting" [Dkt #40] that was filed in this proceeding by the Chapter 7 Trustee, which identifies Wyatt as the Debtor's representative and a 50% member, and which identifies McAlister the other 50% owner.

Wyatt had no authority to file the Voluntary Petition on behalf of W&M. McAlister did not consent to the initiation of this bankruptcy proceeding. This Court should dismiss this case, and allow the Chancery Court of Madison County to proceed with the Dissolution Proceeding, as authorized by the MLLCA. In that connection, just as the MLLCA governs the formation and operations of a limited liability company, including a professional limited liability company, it also makes provision for its dissolution and the winding up of its business and affairs. This is a two step procedure under the statute.

The first step is the dissolution, which can be a non-judicial dissolution or a judicial dissolution. In the case of W&M, Wyatt elected to seek a judicial dissolution, which is governed by the provisions of Miss. Code Ann. §79-29-802. He was able to initiate a judicial dissolution

proceeding unilaterally, because such action does not require the vote of a majority of the entity's members. Section 79-29-802 provides, in pertinent part, that "[o]n *application by or for a member*, the chancery court for the county in which the registered office of the limited liability company is located may decree dissolution of a limited liability company whenever any of the following occurs: (a) It is not reasonably practicable to carry on the business in conformity with the certificate of formation …." (Emphasis added)  Notably, the provision authorizes a single member to apply for a judicial dissolution. A majority vote of the members is not required. In addition, exclusive jurisdiction for a dissolution proceeding is vested in the chancery court for the county in which the registered office of the entity is located. In any event, the MLLCA further provides, in pertinent part, that "[a] certificate of dissolution must be delivered to the office of the Secretary of State for filing upon the dissolution and the commencement of winding up of the limited liability company …." *Id.* at §79-29-204.

The second step is the winding up of the entity's business and affairs. This step is also accomplished under the provisions of the MLLCA, particularly including the provisions of Section 79-29-803. Upon completion of the winding up, Section 79-29-204 requires the delivery of a certificate of cancellation to the Secretary of State for filing.

The judicial Dissolution Proceeding in the Madison County Chancery Court was initiated by Wyatt, which he was authorized by statute to do. It appears that he initiated this bankruptcy proceeding for improper purposes. In any event, as is shown above, he initiated this proceeding

without having the required authority to do so. Accordingly, McAlister requests this Court to grant her Motion and dismiss this action.

    Dated: March 30, 2010

                          Respectfully Submitted,

                          MARY McALISTER

                          By: /s/ Lawrence E. Allison, Jr.
                                One of Her Attorneys

OF COUNSEL:

Christopher A. Shapley (MSB #6733)
Lawrence E. Allison, Jr. (MSB #1534)
Joseph A. Sclafani (MSB #99670)
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Post Office Drawer 119
Jackson, MS  39205
Telephone: 601-948-3101
Facsimile: 601-960-6902
E-mail: cshapley@brunini.com
E-mail: lallison@brunini.com
E-mail: Jsclafani@brunini.com

# **CERTIFICATE OF SERVICE**

I, the undersigned attorney for Mary McAlister, certify that I have this day caused the above and foregoing pleading or other document, together with the exhibits thereto, to be filed electronically through the Court's ECF system, and that it was served electronically on all parties enlisted to receive service in this case electronically.

I further certify that I have also caused it to be separately served by electronic mail and by first class United States Mail, postage prepaid, on the following persons:

>Vann F. Leonard
>P. O. Box 16026
>Jackson, MS  39236-6026
>E-mail:  vfllaw@bellsouth.net
>
>Derek Wyatt
>Wyatt Law PLLC
>102 Northlake Lane
>Madison, MS 39110
>E-mail: dwyatt@wyattlawpllc.com
>
>Eileen N. Shaffer
>401 E. Capitol Street, Suite 316
>P. O. Box 1177
>Jackson, MS  39215-1177
>E-mail: enslaw@bellsouth.net
>
>Stephen Smith
>5 Old River Place, Suite 107
>Jackson, MS  39202-3449
>E-mail: trustee1@smithcpafirm.com
>
>Ronald H. McAlpin
>Assistant U.S. Trustee
>A. H. McCoy Federal Building, Suite 706
>100 W. Capitol Street, Suite 706
>Jackson, MS 39269
>E-mail:  Ronald.McAlpin@usdoj.gov

THIS the  30th  day of March, 2010.

                                               /s/  Lawrence E. Allison, Jr.