IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                                                       CHAPTER 7

**WYATT & McALISTER, PLLC,**                                     **CASE NO. 09-04354-EE**
**DEBTOR**

**REPLY MEMORANDUM OF MARY McALISTER
RESPONDING TO
DEREK WYATT'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

MARY McALISTER ("McAlister") submits this Reply Memorandum in support of her "Emergency Motion to Dismiss Chapter 7 Voluntary Petition" [Doc #6] (the "Motion"). McAlister responds to the "Memorandum of Law Submitted by Interested Party Filer Derek A. Wyatt in Opposition to Mary McAlister's Motion to Dismiss" [Doc #75] ("Wyatt's Opposition Brief"), as follows:

**Introduction**

The issue before this Court is whether Derek Wyatt ("Wyatt"), a 50% equity owner in Wyatt & McAlister, PLLC ("W&M"), had the requisite authority to file the Voluntary Petition commencing this bankruptcy proceeding on behalf of W&M. Wyatt acknowledges in his Opposition Brief that W&M is governed by the Mississippi Limited Liability Company Act (sometimes referred to herein as "MLLCA")[1/] and, therefore, that the issue before this Court is answered by the provisions of the Act. However, Wyatt attempts in his Opposition Brief to obfuscate the simple, straightforward facts that are relevant to the issue before this Court, and to distort the clear provisions of the Act, by arguing irrelevant and erroneous allegations and conclusions of fact and law. As McAlister demonstrated in her "Memorandum of Mary

---

[1/]     Miss. Code Ann. §§79-29-101, *et seq.*

McAlister in Support of Motion to Dismiss" [Doc #73] (McAlister's "Initial Memorandum"), and as she will again demonstrate below, the applicable provisions of the MLLCA provide that a majority vote of the members of a Mississippi limited liability company is required to take such action on its behalf. Wyatt owns only a 50% equity interest in W&M. McAlister owns the other 50% equity interest. Nevertheless, Wyatt filed the Voluntary Petition on behalf of W&M without the consent, or even the knowledge, of McAlister. Accordingly, Wyatt did not have the requisite authority to file the Petition on behalf of W&M. McAlister's Motion must be granted.[2]

**Argument**

*A. Reply to Arguments Contained in Introductory Sections of Wyatt's Opposition Brief*

In the first sixteen, plus, pages of Wyatt's Opposition Brief, Wyatt attempts to set the stage for the arguments he makes in the Brief. In doing so, however, he demonstrates the obfuscation that follows in his arguments.

For example, Wyatt refers to McAlister as an "alleged 50% member of the two member LLC Debtor," and then states, "McAlister admits she ceased her affiliation with the Debtor by '[resigning her] employment' eleven months prior to the filing." (Wyatt's Opposition Brief, p. 1) Of course, there is no dispute that McAlister resigned her employment as an attorney with W&M. (*See* McAlister's Employment Resignation Letter, March 5 Hearing, Exhibit 2)[3] However, in the letter by which she informed Wyatt of her decision to do so, she also invited him to meet with her attorneys "to work our a mutually agreeable voluntary dissolution of the PLLC,

---

[2] As McAlister noted in her Initial Memorandum, the Court bifurcated its consideration of the relief requested by the Motion, and stated that it would decide the request for dismissal first and retain jurisdiction to decide the request for sanctions after an order ruling on the request for dismissal becomes final. Accordingly, McAlister did not address the request for sanctions in her Initial Memorandum, and will not address it in this Reply Memorandum.

[3] A copy of McAlister's Employment Resignation Letter was admitted into evidence as Exhibit 2 at the hearing conducted before this Court on March 5, 2010. A copy is also attached to McAlister's Initial Memorandum as Exhibit 2.

and a winding-up of its affairs," and she informed him that "[u]ntil we can reach an agreement on dissolution, I will maintain my 50% equity interest in" W&M. (*Id.*) Wyatt's conclusion that McAlister "cease[d] her affiliation with the Debtor" is patently erroneous. She terminated only her employment relationship with W&M. She did not intend, or attempt, to withdraw as a member of the limited liability company. Indeed, she could not have withdrawn as a member had she attempted to do so, because the MLLCA expressly provides that [u]nless the certificate of formation or limited liability company agreement provides that a member has the power to do so, ***a member has no power to withdraw from a limited liability company***." Miss. Code Ann. §79-29-307(3) (Emphasis added)

   Similarly, throughout the introductory sections, and indeed throughout Wyatt's Opposition Brief, Wyatt alleges that McAlister's resignation of her employment constituted a "wrongful dissolution." (*See*, *e.g.*, Wyatt's Opposition Brief, pp. 2, 3, 5, 9, 15, *et seq.*) He even refers to her resignation as a "*de facto* dissociation." (*See, e.g., id.* at 9) However, as clearly reflected in McAlister's Employment Resignation Letter, McAlister did not intend or attempt to withdraw as a member of W&M. Further, as clearly provided by Section 79-29-307(3), she had no power to do so. Even if McAlister had attempted to withdraw as a member, her attempt to do so would have been ineffective. That is undoubtedly the reason that a legally ineffective withdrawal is not listed as an "event of dissociation"[4/] under the provisions of Section 79-29-307. And, of course, there is no such thing as a "*de facto* dissociation." Section 79-29-307(1) clearly identifies and describes the events of dissociation. Section 79-29-103(g) defines an "event of dissociation" as an event that causes a person to cease to be a member, as defined in 70-29-307,

---

[4/] An "event of dissociation" is defined in the MLLCA as "an event that causes a person to cease to be a member as provided in Section 79-29-307." Miss. Code Ann. §79-29-103(g)

- 3 -

and Section 79-29-103(n) defines a "member" as "a person that has been admitted to a limited liability company … and that has not dissociated from the limited liability company."

In the introductory sections of Wyatt's Opposition Brief, as well as subsequently in the argument section, Wyatt seems to become confused as to whether W&M is managed by managers or by its members. (*See, e.g.,* Wyatt's Opposition Brief, p. 3 (quoting §79-29-401(7), which provides that "any action required or permitted to be taken by the managers … may be taken upon a majority vote of the managers"); *See, also*, *id*. at p. 4 (stating that "McAlister's post-resignation rights, if any, are valid or invalid depending upon her current affiliation as a member, or a manager," and citing §§79-29-304(1) (voting by members) and 79-29-401(7) (voting by managers)) This issue posed by Wyatt is a red herring. Section 79-29-401 has no applicability to W&M. It applies only to limited liability companies that are managed by a manager or managers.[5/] W&M's Certificate of Formation reflects that no part of its management is vested in a manager or managers. Therefore, W&M is managed by its members. Miss. Code Ann. §79-29-302

Wyatt also continues to argue that McAlister agreed to provide unlimited funding for W&M's operations, and that her failure to provide funding was a breach of the alleged agreement. (*See, e.g.,* Wyatt Opposition Brief, pp. 6, 9, 11, 12) As McAlister demonstrated in her Initial Brief, at page 10-11, even if she had been so unwise as to agree to provide unlimited funding, the agreement would be unenforceable. The governing provision of the MLLCA expressly provides that "[a] promise by a member to contribute to the limited liability company

---

[5/]  Section 79-29-401(1) provides that "[t]he certificate of formation of a limited liability company may delegate responsibility for managing a limited liability company to or among one or more managers to the extent provided therein or in the limited liability company agreement." Section 70-29-302 provides that "[e]xcept to the extent that the certificate of formation provides for management of a limited liability company by a manager or managers, management of a limited liability company shall be vested in its members."

- 4 -

is not enforceable unless set out in a writing signed by the member." Miss. Code Ann. §79-29-502

### B. Reply to Wyatt's Affidavit

In the introductory sections of Wyatt's Opposition Brief, Wyatt refers to the Affidavit that he attached as an unmarked exhibit to his "Objection and Response to Motion to Dismiss" [Doc #43] ("Wyatt's Objection").[6/] Even a cursory examination of the Wyatt Objection Affidavit reveals that it contains little but self-serving allegations and conclusions; that most of the allegations and conclusions are not relevant to the issue before this Court; that most of the allegations and conclusions are based on facts of which Wyatt has no personal knowledge and/or documents which are not admissible evidence. Further, Wyatt even states in his Brief that the Affidavit "detail[s] the history of Wyatt's and McAlister's dealings, and related issues concerning attorney David Nutt," thus tacitly acknowledging that the Affidavit has no relevance to the issue before this Court, which is whether Wyatt had the requisite authority to file the Voluntary Petition commencing this Chapter 7 proceeding on behalf of W&M.

For example, after stating that prior to the formation of W&M he and McAlister worked with the law firm of Nutt & McAlister, PLLC (a limited liability company in which David Nutt is an 80% equity owner and McAlister is a 20% equity owner), Wyatt alleges various facts and conclusions concerning Nutt & McAlister, PLLC's involvement in a joint venture that represented clients in certain litigation that arose following Hurricane Katrina, and concerning his relationship with that firm and his claim against that firm for compensation he claims he is owed. (*See, e.g.,* Wyatt Objection Affidavit, ¶s 7-10, 17-19, 21-23) As McAlister noted in her Initial Memorandum, at page 2, Wyatt's multiple disputes with David Nutt, McAlister, the firm

---

[6/] The affidavit attached to Wyatt's Objection, entitled "Affidavit and Supporting Records," will be referred to in this Reply Memorandum as the "Wyatt Objection Affidavit."

- 5 -

of Nutt & McAlister, PLLC and others concerning these matters are currently the subjects of litigation pending in both the Chancery Court of Madison County, Mississippi, and the Circuit Court of Lafayette County, Mississippi.[7/]  These extraneous controversies have no relevance to the issue before this Court – which is whether Wyatt had the requisite authority to file the Voluntary Petition commencing this bankruptcy proceeding.

As another example, in his Affidavit Wyatt makes extensive allegations concerning a so-called "transfer agreement," by which he claims assets of Nutt & McAlister, PLLC were transferred to W&M.  (*See, e.g.*, Wyatt's Objection Affidavit, ¶s 11, 13-16, 19, 22)  Wyatt refers to this alleged transfer in his Opposition Brief as the "buy out agreement" or the "buy out/name change agreement."  (*See, e.g.*, Wyaatt's Opposition Brief, pp. 6-8, 10-13, 15-16)  This alleged agreement is the basis on which Wyatt claims that most of the furniture, equipment, furnishings, files and other property that was used by W&M during its brief period of operations are owned by W&M.  Wyatt's contentions concerning ownership of these items are being vigorously contested.  In any event, issues pertaining to the ownership of these assets are relevant to the dissolution and winding-up of W&M; however, they are not relevant to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition commencing this bankruptcy proceeding on behalf of W&M.

With respect to the alleged buy out agreement, McAlister stated in her Initial Brief, at pages 4-5, that on November 11, 2009, the Special Master appointed by the Chancery Court of

---

[7/]  Wyatt's status while working for Nutt & McAlister, PLLC, the claims against the firm and others, and other related issues, are currently the subjects of an action filed in the Chancery Court of Madison County, Mississippi, on February 19, 2009, styled *David Nutt, P.A.; David Nutt & Associates, P.C., f/k/a David Nutt & Associates, P.A.; and Nutt & McAlister, PLLC vs. Derek A. Wyatt*, Civil Action No. 2009-258.  Those issues are also the subjects of a subsequently filed action pending in the Circuit Court of Lafayette County, styled *Derek A. Wyatt vs. Richard F. "Dickie" Scruggs; David H. Nutt; Mary Krichbaum McAlister, a/k/a "Meg" McAlister; SLF, Inc., formerly the Scruggs Law Firm, P.A.; Nutt & McAlister, P.L.L.C.; David Nutt, P.A.; David Nutt & Associates, P.C.; and John/Jane Does 1-25*, Civil Action No. L09-260.

Madison County in the statutory dissolution proceeding for W&M conducted an evidentiary hearing to determine the assets of W&M.[8/] The purpose of the hearing was to determine whether the disputed assets are, in fact, owned by W&M, as Wyatt claims, or whether they are owned by Nutt & McAlister, PLLC and/or other entities in which David Nutt owns interests, as McAlister and David Nutt contend.

During the course of that hearing, David Nutt testified that, after he decided to cease practicing law, he and McAlister began discussions about whether they would dissolve Nutt & McAlister, PLLC, or whether she would buy his interest in the firm. (*See* Transcript of November 11 Hearing, pp. 7-8) When McAlister and Wyatt decided to form W&M, Nutt agreed to allow McAlister to move certain furniture, computers, and other furnishings and equipment constituting a portion of the disputed assets to W&M's new offices, with the idea that he and McAlister would later reach an agreement and that McAlister would pay him for the assets or for his interest in Nutt & McAlister, PLLC.[9/] (*Id*. at pp. 9-10) However, after the assets were moved to the offices of W&M, and before David Nutt and McAlister reached an agreement under which McAlister would purchase the disputed assets or Nutt's interest in Nutt & McAlister, PLLC, W&M's ceased its operations. The title to the assets was never transferred; David Nutt was never paid for the assets or for his interest in Nutt & McAlister, PLLC; and, in fact, no price

---

[8/]  *See* "Transcript of Hearing before Special Master Robert W. Sneed, Conducted on November 11, 2009, in Cause No. 20090-90-B in the Chancery Court of Madison County, Mississippi" (hereafter "Transcript of November 11 Hearing"). McAlister supplemented her Motion to Dismiss [Doc #6] by filing "Mary McAlister's Supplement to Emergency Motion to Dismiss Chapter 7 Voluntary Petition" [Doc #83] to add the Transcript as Exhibit B to the Motion. A copy of the Transcript is also attached to this Reply Memorandum, as Exhibit 1, for the convenience of the Court.

[9/]  David Nutt testified that he also retained McAlister to continue to represent clients of the firms in which he owned interests, and that he agreed to pay her a fee to complete those matters. (*See* Transcript of November 11 Hearing, pp. 42-43) McAlister testified that she transferred to the W&M offices certain hard copy files and electronic files of the Nutt entities to enable her to complete the work in question. (*See Id.* at pp. 87-90) Wyatt contends that these files were also acquired by W&M under the so-called buy out agreement, although he voluntarily relinquished some of the hard copy files after filing the dissolution proceeding. The ownership of the remaining files is still disputed.

was ever agreed upon. (*Id*. at pp. 10-11, 28, 41-42)  Further, Nutt & McAlister, PLLC has not been dissolved. (*Id*. at p. 50)

McAlister also testified that no agreement had been reached between her and David Nutt for the purchase of the disputed assets or for the purchase of his interest in Nutt & McAlister, PLLC, and that David Nutt was never paid for the assets or for his interest in Nutt & McAlister, PLLC.  (*Id*. at pp. 55, 59-60)  She also testified that it was her intent to purchase David Nutt's interest in Nutt & McAlister, PLLC for herself, and not for W&M.  (*Id*. at p. 94)  She testified, "I thought we [McAlister and Wyatt] were there in good faith to build a law firm and work hard on [W&M] matters.  But I came to realize [that] apparently Mr. Wyatt never intended to work on anything other than suing David Nutt and me."  (*Id*. at p. 219)  When that became apparent to her, McAlister ceased in her efforts to acquire the assets of Nutt & McAlister, PLLC or to acquire David Nutt's interest in the firm.  (*Id*. at p. 219)

Even Wyatt testified, on cross-examination by counsel for Carousel Development, LLC (W&M's landlord), that if there were an asset purchase agreement or other document that memorialized the contemplated transaction between McAlister and David Nutt, or between W&M and Nutt & McAlister, PLLC, he had never seen such document. (*Id*. at p. 194)  Clearly, there was no buy out agreement, and no transfer of assets by Nutt & McAlister, PLLC, or by any other entity in which David Nutt owned interests, to McAlister, to Wyatt or to W&M.

Wyatt also alleges in his Affidavit that "I have repeatedly given written notice to the Brunini law firm and its attorneys that they have a conflict of interests in counseling and assisting McAlister in a manner contrary to statutory law …." (*See* Wyatt's Objection Affidavit, ¶ 24)  What Wyatt failed to state in his Affidavit is that he filed a motion in the dissolution proceeding to disqualify the Brunini Firm, and that, after a hearing, the Chancery Court Judge

found that the motion had no merit and denied it. In the November 11 Hearing, which occurred long after the entry of the order denying the motion to disqualify the Brunini Firm, Wyatt testified:

> I've made my record over and over, that Chris [Shapley], Joseph [Sclafani], [and] Larry Allison, have what I consider to be very serious conflicts of interest throughout all of this. Judge Brewer denied a formal motion on that. However, it's preserved in the record and, you know, I just don't need to continuously object about it, because the record speaks for itself, but I do and always will.

(*See* Transcript of November 11 Hearing, p. 100)

These are but a few examples of the nature of the allegations contained in Wyatt's Objection Affidavit, and of the inadequacies of the Affidavit. The Affidavit contains little but self-serving allegations and conclusions. Most of the allegations and conclusions are not relevant to the issue before this Court. Further, most of the allegations and conclusions are based on facts of which Wyatt has no personal knowledge and/or documents that are not admissible evidence. Bankruptcy Rule 7056, which is applicable to contested matters by virtue of Bankruptcy Rule 9014, requires that such affidavits be made on personal knowledge, set out <u>facts</u> that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Even if the allegations contained in the Affidavit were relevant to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition on behalf of W&M, which they are not, the Affidavit would not otherwise meet the requirements of Bankruptcy Rule 7056. The Affidavit should be disregarded in its entirety, or stricken.

### *C. Reply to Legal Argument Section of Wyatt's Opposition Brief*

Many of the allegations, conclusions and arguments set forth in the "Legal Argument" section of Wyatt's Opposition Brief have been addressed above and, therefore, will not be addressed in this section of McAlister's Reply Memorandum.

On page 19 of Wyatt's Opposition Brief, Wyatt cites the case of *Caplash v Rochester Oral & Maxillofacial Surgery Associates, LLC*, 48 A.S. 3$^d$ 1139, 851 N.Y.S. 2d 769 (4th Dept., February 1, 2008), stating that "the court reversed a lower court ruling allowing a movant to proceed with dissolution, and finding that the lower court must first determine whether the movant had standing to proceed in light of his resignation as an employee, potentially removing his membership status."

McAlister notes that the cited opinion is one of at least four published opinions in the somewhat convoluted *Caplash* litigation. The opinion cited by Wyatt reveals that, unlike Wyatt and McAlister in the instant case, the members of the LLC involved in the *Caplash* litigation had entered into an ***operating agreement that unequivocally provided for termination of membership in the event of termination of a member's employment with the LLC***. (*Id.*) Because Wyatt and McAlister did not enter into an operating agreement containing such a provision, and because the MLLCA provides that a member has no power to withdraw as a member unless such power is provided by an operating agreement,[10/] McAlister's resignation of her employment did not cause the termination of her membership in W&M or otherwise affect her right to vote on any action required or permitted to be taken by the members. *See* Miss. Code Ann. §§79-29-302 (management vested in members) and 79-29-304(2) (actions may be taken upon a majority vote of all members)  The holding in the cited *Caplash* opinion has no relevance to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition on behalf of W&M.

Although the holding in *Caplash* is not relevant to the issue before this Court, McAlister notes that the issue raised by the appellate court was whether the movant's resignation letter was effective to terminated his employment and, therefore, whether the letter terminated the movant's

---

[10/]  *See* Miss. Code Ann. §79-29-307(3)

- 10 -

membership in the LLC under the provisions of the operating agreement.  Specifically, the appellate court found that the member had an employment agreement with the LLC that provided it would terminate by mutual agreement in writing by the employer and employee.  In that connection, the non-movant had produced a letter written by the movant "indicating" that he was resigning as an employee, and a letter to the movant from an attorney representing the LLC purporting to accept the movant's resignation on behalf of the LLC.  The appellate court found that the record did not disclose the circumstances under which the attorney came to represent the LLC or whether such representation was authorized by the operating agreement.[11/]

Wyatt next marvels at the conspicuous omission of the words "withdraw" or "withdrawal" in McAlister's Employment Resignation Letter, and notes that she opted instead to "characterize her departure from W&M as a '[resignation of] my employment as an attorney.'"  (*See* Wyatt's Opposition Brief, p. 19) (Brackets in original)   Wyatt then asks the rhetorical question, "does the Act authorize a member to circumvent the non-withdrawal provision, simply by 'resigning employment?'"  (*Id.*)

The answer to Wyatt's rhetorical question is simple.  McAlister did not circumvent the "non-withdrawal provision" of the MLLCA, because she did not intend, or attempt, to withdraw as a member of W&M.  She simply resigned her employment as an attorney with W&M.  There is no provision in the MLLCA that requires all members to be actively employed in a limited liability company's business; nor, is there any provision that prevents a member who becomes actively employed in the company's business from resigning such "employment" while

---

[11/]    Although the *Caplash* litigation has no relevance to the instant case, McAlister notes that a subsequent published opinion reflects a finding by the lower court that the movant's resignation letter was intended to be conditioned on the LLC releasing the movant from certain provisions in his employment agreement, that the release never occurred, and, thus, that the movant's resignation did not become effective when accepted by the lawyer purportedly representing the LLC.  *See Caplash v Rochester Oral & Maxillofacial Surgery Associates, LLC*, 20 Misc. 3d 1104 (A), 2008 WL 2468553, *7-8 (N.Y. Supp., June 20, 2008)  Therefore, the court ruled that the movant's membership had not terminated, and granted the movant's summary judgment declaring the LLC dissolved.  (*Id.*)

remaining a member of the limited liability company.  Indeed, many limited liability companies are capitalized by investments made by passive investors who purchase memberships with no intention of ever becoming employed by the company.  Had McAlister and Wyatt entered into an operating agreement similar to that entered into by the *Caplash* litigants discussed above, they could have agreed that each of the members would be required to be employed as an attorney for W&M, and that a member's resignation of such employment would also constitute an event of dissociation terminating such member's ownership interest in W&M.  However, they did not enter into such an agreement.

Wyatt then asks, "given the fact that McAlister's departure was intended to cause insolvency and force dissolution, is the 'resignation' a *de facto* withdrawal and 'event of dissociation' no matter how characterized."  (*See* Wyatt's Opposition Brief, pp. 19-20)  Again, the answer is simple.  First, McAlister's departure was not intended to, and did not, cause W&M's insolvency.  W&M was already insolvent when she resigned her employment as an attorney with W&M.  However, she recognized the need to dissolve W&M, and to that end invited Wyatt to meet with her attorneys to work out a voluntary dissolution of W&M and a winding-up of its affairs.  (*See* McAlister Employment Resignation Letter, March 5 Hearing, Exhibit 2)  Rather than meeting with McAlister's attorneys, Wyatt locked McAlister out of the premises, filed the judicial dissolution proceeding in Madison County Chancery Court, wrongfully held over in the W&M offices for approximately seven months (until August 1, 2009) while operating a newly formed professional limited liability company named "Wyatt Law Firm PLLC," and refused to even discuss a voluntary dissolution and winding-up of W&M.  (Wyatt has not yet accounted for the amount of the unpaid expenses about which he complains that was actually incurred between January 9, 2009, and August 1, 2009, when he vacated the

premises, or that otherwise resulted from his wrongful holding over and use of the premises after McAlister resigned her employment.)

Second, as discussed above, there is no such thing as a *de facto* dissociation. The events of dissociation under the MLLCA are clearly listed and described in Miss. Code Ann. §79-29-307(1). Even if the fact scenario presented by Wyatt were true, which it is not, the scenario simply does not fit the description of any of the listed events of dissociation, and the MLLCA makes no provision for *de facto* events of dissociation.

Wyatt next argues that the limited liability company statutes in Florida, Massachusetts, Minnesota, California, Nevada, and perhaps Ohio and other states, use the words "resign" and "withdraw" interchangeably. He argues, "[g]iven that McAlister was clearly without power to 'withdraw,' if her actions in 'resigning' are found to constitute 'withdrawal,' it logically follows that she ceased to be a member as of January 9, 2009, and has no right to vote." (See Wyatt's Opposition Brief, pp. 20-21) With deference to Wyatt, his conclusion does not "logically follow" from the fact scenario he presents. If "McAlister was clearly without power to 'withdraw,'" then any words she used would have been ineffective to terminate her membership in W&M. Further, even assuming that Wyatt's interpretation of the other states' statues is correct, it is the MLLCA, and not the acts of other states, that governs W&M. Additionally, the fact that the words "resign" and "withdraw" may be used interchangeably is not relevant to the issue before this Court. McAlister did not intend, or attempt, to resign or withdraw as a member of W&M, or otherwise seek to terminate her membership in W&M. More important, her efforts would have been ineffective under the provisions of Section 79-29-307(3) had she attempted to terminate her membership.

- 13 -

Wyatt next provides a lengthy discussion concerning the voting rights of a manager, versus the voting rights of a member. (See Wyatt's Opposition Brief, pp. 21-23) The discussion, even if it is correct as it pertains to managers, which it is not, has no relevance to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition on behalf of W&M. As discussed above, W&M is a member managed, rather than a manager managed, limited liability company. Management of W&M is clearly vested in its members under the provisions of Miss. Code Ann. §79-29-302. Wyatt was not authorized to file the Voluntary Petition because he was not authorized to do so by a majority vote of the members. (*See Id.* §79-29-304.)

Wyatt next cites, without discussion, *In re 210 West Liberty Holdings, LLC*, 2009 Bankr. LEXIS 1706 (Bankr. N. D. W. Va. May 29 2009). (*See* Wyatt's Opposition Brief, p. 23) In this case, a member of the LLC requested that the LLC's Chapter 11 bankruptcy case be dismissed because it was not properly authorized. The court held that the filing of the bankruptcy was authorized as provided by the operating agreement. W&M has no operating agreement. This case has no relevance to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition commencing this bankruptcy proceeding on behalf of W&M.

Wyatt then briefly discusses the court's holding in *Spires v. Lighthouse Solutions, LLC*,[12] 4 Misc. 3d 428, 778 N.Y.S.2d 259, 2004 N.Y. Misc. LEXIS 628 (Sup. Ct. of New York, Monroe County, May 6, 2004). (*See* Wyatt's Opposition Brief, p. 23) The LLC in this case had three members, Spires, Casterline and Alamo. As a result of business differences, Spires wanted to withdraw as a member, and Casterline and Alamo wanted to remove Spires as a member. However, they could not reach an agreement on how to accomplish it. Eventually, Spires filed a petition to dissolve the LLC. The petition was contested by Casterline and Alamo. The court found that the only agreement between the parties that was sufficient to constitute an operating

---

[12] Wyatt incorrectly reported the style of the case as "*Spires v Casterline*."

- 14 -

agreement involved only the manner of voting by the members. The agreement contained no provisions governing withdrawal or expulsion. Therefore, the court held that the issues presented were governed by provisions of the New York limited liability law. The New York limited liability law contained no provision for expulsion of a member, and provided that a member had no power to withdraw from a limited liability company prior to its dissolution and winding-up. However, the New York limited liability law contained a provision that authorized a member to apply to the supreme court to dissolve a limited liability company whenever it was no longer reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. The court found that it was not reasonably practicable for the LLC to carry on its business in conformity with its articles of organization, and decreed that it be dissolved and wound-up. The *Spires* case has no relevance whatsoever to the issue now before this Court – whether Wyatt had the requisite authority to file the Voluntary Petition commencing this Chapter 7 case on behalf of W&M.

Finally, Wyatt cites *Eureka VIII LLC v. Niagara Falls Holdings LLC*, 899 A.2d 95 (Del.Ch. 2006). (*See* Wyatt's Objection Brief, p. 24) This case involves a limited liability company, Niagara Falls Redevelopment LLC (the "LLC"), that had two 50% members. One member, Eureka VIII LLC ("Eureka"), filed the cited action alleging that the other member, Niagara Falls Holdings LLC ("Holdings"), had committed at least four material breaches of the operating agreement. Eureka sought a declaratory judgment that Holdings relinquished its membership in the LLC as a result of the breaches, and retained only the economic rights of its ownership stake in the LLC. Holdings counterclaimed, seeking damages for an alleged breach by Eureka of a buy/sell agreement, and also seeking dissolution of the LLC. The court found four clear breaches of the operating agreement by Holdings, and found Eureka's requested

- 15 -

remedy for the breaches to be both equitable and proportionate.  The court found against Holdings on its claim for breach of the buy/sell agreement, and also held that the provisions of the operating agreement did not require dissolution under the facts of the case.  This case was decided under the provisions of an operating agreement.  Further, the case has no relevance to the issue of whether Wyatt had the requisite authority to file the Voluntary Petition on behalf of W&M.

## Conclusion

There is no dispute that the Certificate of Formation of W&M identifies Wyatt and McAlister as the members of W&M; and, that no operating agreement was executed by Wyatt and McAlister.  There is also no dispute that because there is no operating agreement W&M is governed solely by the provisions of the MLLCA.  Under the provisions of the MLLCA, each member of W&M is entitled to one vote on any matter entitled to be voted on by the members, and any action required or permitted to be taken by the members may be taken upon a majority vote of the members.  (*See* Miss. Code Ann. §79-29-304)

The MLLCA defines "member" as a person that has been admitted to a limited liability company and that has not dissociated from the limited liability company.  (*Id.* §79-29-103(n))  It further defines "event of dissociation" as an event that causes a person to cease to be a member as provided in Section 79-29-307. (*Id.* §79-29-103(g))    Section 79-29-307(1) provides that a person ceases to be a member of a limited liability company upon the occurrence of certain listed events of dissociation.  Under the facts of this case there has been no event of dissociation.  McAlister is now, and has been since the formation of W&M, a 50% equity owner of W&M.

It is clear that Wyatt filed the Voluntary Petition commencing this bankruptcy proceeding on behalf of W&M without McAlister's consent, or even her knowledge.  Therefore, it is clear

- 16 -

that he filed the Petition without having the requisite authority to do so.  McAlister's Motion must be granted, and this bankruptcy case must be dismissed.

Dated:  April 12, 2010

Respectfully Submitted,

MARY McALISTER

By:  /s/  Lawrence E. Allison, Jr.
One of Her Attorneys

OF COUNSEL:

Christopher A. Shapley (MSB #6733)
Lawrence E. Allison, Jr. (MSB #1534)
Joseph A. Sclafani (MSB #99670)
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Post Office Drawer 119
Jackson, MS  39205
Telephone: 601-948-3101
Facsimile: 601-960-6902
E-mail: cshapley@brunini.com
E-mail: lallison@brunini.com
E-mail: Jsclafani@brunini.com

## **CERTIFICATE OF SERVICE**

      I, the undersigned attorney for Mary McAlister, certify that I have this day caused the above and foregoing pleading or other document to be filed electronically through the Court's ECF system, and that it was served electronically on all parties enlisted to receive service in this case electronically.

      I further certify that I have also caused it to be separately served by electronic mail on the following persons:

      Vann F. Leonard
      P. O. Box 16026
      Jackson, MS  39236-6026
      E-mail:  vfllaw@bellsouth.net

      Derek Wyatt
      Wyatt Law PLLC
      102 Northlake Lane
      Madison, MS 39110
      E-mail: dwyatt@wyattlawpllc.com

      Eileen N. Shaffer
      401 E. Capitol Street, Suite 316
      P. O. Box 1177
      Jackson, MS  39215-1177
      E-mail: enslaw@bellsouth.net

      Stephen Smith
      5 Old River Place, Suite 107
      Jackson, MS  39202-3449
      E-mail: trustee1@smithcpafirm.com

      Ronald H. McAlpin
      Assistant U.S. Trustee
      A. H. McCoy Federal Building, Suite 706
      100 W. Capitol Street, Suite 706
      Jackson, MS 39269
      E-mail:  Ronald.McAlpin@usdoj.gov

      THIS the   12th   day of April, 2010.

                                /s/  Lawrence E. Allison, Jr.