**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:                                                      CHAPTER 7

WYATT & McALISTER, PLLC,                    CASE NO. 09-04354-EE
DEBTOR

**OBJECTION AND RESPONSE OF MARY McALISTER**
**TO JOINT MOTION FOR NEW TRIAL, TO ALTER OR**
**AMEND JUDGMENT, AND/OR FOR RELIEF FROM FINAL JUDGMENT**

MARY McALISTER ("McAlister") objects and responds to the "Joint Motion for New

Trial, to Alter or Amend Judgment, and/or for Relief from Final Judgment" [Doc #94 and Doc

#95][1/] ("Motion") and to the "Memorandum of Authorities in Support of Joint Motion for New

Trial, to Alter or Amend Judgment, and/or for Relief from Final Judgment" [Doc #96 and Doc

#97][2/] ("Memorandum") (the Motion and Memorandum will sometimes be referred to

collectively as "Wyatt's Joint Motion").  McAlister bases her Objection and Response on the

following:

**Introduction**

On April 23, 2010, this Court entered its "Findings of Fact and Conclusions of Law on

the Emergency Motion to Dismiss Chapter 7 Voluntary Petition" [Dkt #88] ("Findings and

Conclusions") and its "Final Judgment Granting in Part the Motion to Dismiss Chapter 7

Voluntary Petition" [Dkt #89] ("Final Judgment").  In its Findings and Conclusions, the Court

held that, because McAlister did not vote in favor of Wyatt & McAlister, PLLC ("W&M") filing

---

[1/]    For a reason or reasons unknown to McAlister, Derek Wyatt ("Wyatt") filed the Motion twice.

[2/]    For a reason or reasons unknown to McAlister, Wyatt filed the Memorandum twice.

the bankruptcy petition, Wyatt did not have the authority to file the petition on behalf of W&M.

Accordingly, this Chapter 7 case was dismissed by the Final Judgment.[3/]

On May 7, 2010, Wyatt filed Wyatt's Joint Motion, purporting to act on behalf of both

W&M, as the Debtor, and himself, as "an interested party filer" and as a self-anointed "member-

manager"[4/] of W&M.  The Motion and the Memorandum reflect the electronic signatures of

Wyatt, purporting to act *pro se*, and of Vann Leonard ("Leonard"), purporting to act on behalf of

W&M.[5/]  In that connection, McAlister notes that both Wyatt and Leonard continued to ignore

the provisions of the Mississippi Limited Liability Company Act ("MLLCA"), and they have

now ignored the ruling of this Court, by purporting to act for W&M in filing Wyatt's Joint

Motion.  For the same reasons that this Court held Wyatt did not have authority to file a

bankruptcy petition on behalf of W&M, he also did not have authority to retain an attorney to

represent W&M, and neither Wyatt nor Leonard had authority to file Wyatt's Joint Motion on

behalf of W&M.  Simply stated, neither Wyatt nor Leonard has authority to speak or act for

W&M.[6/]  If Wyatt wishes to contest this Court's ruling, he may do so only in his capacity as a

---

[3/]    The Final Judgment provides that the Court retains jurisdiction to determine the remaining issue of attorney fees
and sanctions sought by the Motion.

[4/]    The term "member-manager" is not a statutory term.  The Mississippi Limited Liability Company Act
("MLLCA") makes no provision for a "member-manager" of a limited liability company.  However, the terms
"member" and "manager" have distinct and critically important meanings under the provisions of the MLLCA.  The
MLLCA provides that unless a limited liability company's certificate of formation provides for management of the
LLC by a manager or managers, management of the LLC is vested in its members.  *See* Miss. Code Ann. §79-29-
302.  It is not disputed that W&M's certificate of formation does not provide for management by a manager or
managers.  Thus, it is also not disputed that ***management of W&M is vested in its members***.  The MLLCA further
provides that each member of a limited liability company is entitled to one vote on any matter entitled to be voted
on by the members, and that any action required or permitted to be taken by the members may be taken upon a majority
vote of all the members.  *See Id.* at §79-29-304  Under the provisions of the MLLCA, both McAlister and Wyatt are
"members" of W&M; however, neither McAlister nor Wyatt is a "manager" of W&M.

[5/]    The Debtor's "Statement of Financial Affairs – Amended" [Doc #59], at paragraph 9, reflects that Wyatt
retained Leonard to represent W&M in this bankruptcy case.

[6/]    The instant controversy, as well as the controversies which are the subject of the pending litigation in W&M's
Chancery Court dissolution proceeding, are controversies between the two members of W&M, McAlister and
Wyatt.  They are not controversies between W&M and McAlister, as Wyatt continues to try to portray them.

member of W&M.  Similarly, McAlister can object to Wyatt's Joint Motion, but only in her

capacity as a member of W&M.  Neither member may speak or act on behalf of W&M without

the affirmative vote of the other.

Wyatt's Joint Motion, seeks relief under Fed. R. Civ. P. 59 and 60, which are made

applicable to bankruptcy cases by the provisions of Fed. R. Bankr. P. 9023 and 9024,

respectively.  Specifically, Wyatt seeks a new trial, or to alter or amend the Final Judgment

and/or relief from the Final Judgment.  However, the Joint Motion does not address, or meet, the

standards necessary to obtain such relief.  Therefore, the Motion must be denied.

### Objection and Response

Motions "shall state with particularity the grounds therefor, and shall set forth the relief

or order sought."  Fed. R. Bankr. P. 9013  Wyatt's Joint Motion clearly does not meet this

standard.  In the section entitled "Introduction and Background," Wyatt rehashes the same tired

and erroneous conclusions of fact and law that he asserted in his objection to the motion to

dismiss and in the memoranda he filed in opposition to the motion to dismiss.  In the section

entitled "Grounds for Relief," Wyatt states, essentially, that the Court erred in failing to adopt the

conclusions of fact and law that he asserted in his objection and supporting memoranda. He

offers little argument, and even less legal authority, to explain his contention that the Court erred,

or to otherwise support his request that the Court grant him the relief he has requested.  The

Motion and Memorandum do not even discuss the grounds required for relief under the

provisions of Fed. R. Civ. P 59 and 60; nor, do they demonstrate any entitlement to such relief.

Wyatt's Joint Motion merely expresses his disagreement with the rulings of the Court, as

---

Because a limited liability company can act only upon a majority vote of its members, W&M is necessarily neutral.
It must remain neutral until the court that ultimately supervises the dissolution and winding up of W&M decides the
controversies between McAlister and Wyatt.

expressed in the Findings and Conclusions and in the Final Judgment.  Wyatt is attempting to

relitigate the same matters this Court has already decided.

### *1.  Motion for New Trial*

Wyatt's Motion for a new trial is governed by Fed. R. Civ. P. 59(a)(1)(B), which is made

applicable to bankruptcy cases by the provisions of Fed. R. Bankr. P. 9023.  The Rule provides,

in pertinent part, as follows:

(a)    IN GENERAL

(1)    Grounds for New Trial.  The Court may, on motion, grant a new trial
on all or some of the issues – and to any party – as follows:

*****

(B)    after a nonjury trial, for any reason for which a rehearing has
heretofore been granted in a suit in equity in federal court.

Fed. R Civ P. 59(a)(1)(B).

Wyatt's Joint Motion does not discuss Rule 59(a)(1)(B).  It does not identify any

"reasons for which a rehearing has heretofore been granted in a suit in equity in federal court."  It

does not discuss any facts or circumstances in this case which he contends meets such standard,

or provide any authority to demonstrate that such facts or circumstances have ever before caused

a federal court to grant a new trial.  It has been said that, "[a]lthought addressed to the broad

discretion of the trial court, a motion for a new trial [under Rule 59(a)] in a nonjury case should

be based on a manifest mistake of fact or error of law; the court should find substantial reasons

before setting aside a judgment."  12-59 Moore's Federal Practice – Civil §59.13[3][a] (internal

footnotes omitted)  Further, "[a] new trial may not be granted merely because the losing party

may be able to present a better case in another trial."  *Id.* at Civil §59.13[4] (internal footnote

omitted)

Wyatt's Joint Motion has clearly not met the burden required to obtain a new trial under

the provisions of Fed. R. Civ. P. 59(a)(1)(B).  Accordingly, Wyatt's request for a new trial must

be denied.

### 2.  Motion to Alter or Amend Judgment

Wyatt's Motion to alter or amend the Final Judgment is governed by Fed. R. Civ. P.

59(e), which is made applicable to bankruptcy cases by the provisions of Fed. R. Bankr. P. 9023.

Again, Wyatt's Joint Motion does not discuss Rule 59(e).  It does not identify the grounds on

which relief can be granted under Rule 59(e).  It does not discuss any facts or circumstances in

this case which he contends meets such standard, or provide any authority to demonstrate that

such facts or circumstances entitle him to the relief he has requested.

In *Doe v. Catholic Society of Religious and Literary Education*, 2010 WL 1416794 (S.D.

Tex.), the Texas district court stated, [t]he Fifth Circuit warns that altering, amending, or

reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use

sparingly.  The Rule 59(e) standard 'favor[s] denial of motions to alter or amend a judgment'"

*Id.* at *1 (internal citations omitted)

In discussing the legal standard for relief under Rule 59(e), the United States District

Court for the Southern District of Texas has stated:

> Rule 59(e) motions "serve the narrow purpose of allowing a party 'to correct
> manifest errors of law or fact or to present newly discovered evidence.'" [citations
> omitted]  Rule 59(e) cannot be used to introduce evidence that was available prior
> to the entry of judgment, nor should it be employed to relitigate old issues,
> advance new theories, or secure a rehearing on the merits.  [citations omitted]  To
> prevail on a Rule 59(e) motion, the moving party must demonstrate the existence
> of the need to correct a clear error of law, or present newly discovered evidence.
> [citation omitted]

*Trevino v. Moore*, 2010 WL 936538 (S.D. Tex) at *3; *See, also, Tectrans, Inc. v. New Orleans*

*Aviation Board*, 2010 WL 1462181 (E.D. La.) at *3 (Rule 59(e) is properly invoked to correct

manifest errors of law or fact or to present newly discovered evidence, and should not be used to

relitigate prior matters that should have been urged earlier or that simply have been resolved to

the movant's dissatisfaction)

Wyatt's Joint Motion has clearly not met the burden required under the provisions of Fed.

R. Civ. P. 59(e).  Accordingly, Wyatt's request that this Court alter or amend the Final Judgment

must be denied.

### 3.   Motion for Relief from Final Judgment

Wyatt's Motion for relief from the Final Judgment is governed by Fed. R. Civ. P. 60(b),

which is made applicable to bankruptcy cases by the provisions of Fed. R. Bankr. P. 9024.  The

Rule provides, in pertinent part, as follows:

> (b)   GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR
> PROCEEDING.  On motion and just terms, the court may relieve a party or its
> legal representative from a final judgment, order, or proceeding for the following
> reasons:
>
> (1)   mistake, inadvertence, surprise, or excusable neglect;
>
> (2)   newly discovered evidence that, with reasonable diligence, could not
> have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)   fraud (whether previously called intrinsic or extrinsic),
> misrepresentation or misconduct by an opposing party;
>
> (4)   the judgment is void;
>
> (5)   the judgment has been satisfied, released, or discharged; it is based on
> an earlier judgment that has been reversed or vacated; or applying it
> prospectively is no longer equitable; or
>
> (6)   any other reason that justifies relief.

Fed. R Civ P. 60(b)

Wyatt's Joint Motion does not discuss Rule 60(b).  It does not identify the grounds on

which Wyatt relies in requesting this Court to provide relief from the Final Judgment. It does not

discuss any facts or circumstances in this case which he contends meets any standard set forth in

the Rule, or provide any authority to demonstrate that such facts or circumstances entitle him to

the relief he has requested.

        The United States District Court for the Southern District of Mississippi has stated that a

party seeking relief under Rule 60(b) must show that he is entitled to relief under one of the

grounds set forth in the Rule.  *See Duncan v. Caskey*, 2010 WL 1427594 (S.D. Miss.) at *2

Further, "'[a] motion filed pursuant to Rule 60(b) requires a showing of 'extraordinary

circumstances'" *Id*. (citation omitted)  The court in *Duncan* found that the plaintiff had not

asserted any of the grounds required by the Rule, and was merely expressing his disagreement

with the ruling of the court.  *Id*.  Accordingly, the court denied the plaintiff's motion for relief

from the judgment.

        Wyatt's Joint Motion has clearly not met the burden required under the provisions of Fed.

R. Civ. P. 60(b).  Accordingly, Wyatt's request for relief from the Final Judgment must be

denied.

### 4.   *Authorities Discussed in Memorandum*

        In his Memorandum, Wyatt appears to be questioning the jurisdiction of this Court to

decide issues governed by state law.  If he is in fact making such an argument, then he is

obviously incorrect.  This Court clearly has jurisdiction to decide state law issues within the

framework of the Bankruptcy Code, and particularly such issues as were presented by

McAlister's motion to dismiss and as are now presented by Wyatt's Joint Motion.  In any event,

Wyatt discusses two authorities in his Memorandum which he describes as "relevant case law

defining the limits of bankruptcy jurisdiction," one of which is a decision by the United States

Supreme Court that he describes as "surprisingly instructive."  *See* Memorandum, at the second

through fourth unnumbered pages. With deference, the cases in question do not "define the limits of bankruptcy jurisdiction," and neither case is relevant to the issues presented to this Court by Wyatt's Joint Motion.

The first case discussed in the Memorandum is *In re Brady, Texas, Municipal Gas Corp.* 936 F.2d 212 (5th Cir. Tex. 1991). The decision in *Brady* involved damages for an executory contract rejected by Brady, Texas, Municipal Gas Corporation ("Brady Gas") in its Chapter 11 bankruptcy proceeding. Brady Gas owned certain mineral leases, and had entered into a farm-out agreement with certain parties, whom the court referred to as "Appellants" for convenience. In September 1979 the Appellants sued Brady Gas in a state court for breach of the agreement. Subsequently, in June 1980, before the state court had made any ruling, Brady Gas filed for bankruptcy. It rejected the farm-out agreement as an executory contract. The Appellants then filed an adversary proceeding requesting the bankruptcy court to assign the leases covered by the agreement to them. The Appellants also filed a proof of claim in the bankruptcy for the damages resulting from the rejection of the agreement. By December 1980, the Appellants had filed the adversary proceeding in the bankruptcy court seeking specific performance under the agreement, as well as a proof of claim seeking damages for breach of the agreement resulting from the debtor's rejection of the agreement. In addition, the state court action was still pending, but stayed by the automatic stay.

Ultimately, Brady Gas proposed a plan of reorganization, which provided that it would assign its mineral leases to the City of Brady, Texas. The plan also rejected the farm-out agreement, and provided for payment to the Appellants of damages in an amount to be determined be a court of competent jurisdiction. The plan was confirmed, over the objection of Appellants. For almost two years after the confirmation, the Appellants took no action in either

the bankruptcy court or the state court.  Then, in October 1983, the appellants returned to the

state court, fled an amended petition naming as a defendant the City of Brady, as successor to

Brady Gas.  In December 1984, the state court entered summary judgment against the

Appellants.  The Appellants appealed the decision to the Texas Court of Appeals, which affirmed

the decision of the lower court.

The Appellants then went back to the bankruptcy court.  The bankruptcy court found that

the state court's decision was based on that court's misunderstanding of the effect of the

confirmation of the plan, that the state court's decision had been made while the automatic stay

was still in effect, and that the state court's decision was based on other erroneous conclusions

concerning other bankruptcy issues.  For those reasons, the bankruptcy court refused to use the

state court's judgment to bar the Appellants damage claim.

However, for reasons not stated in the opinion, the bankruptcy case was subsequently

reassigned to another bankruptcy judge.  Following additional proceedings, the successor

bankruptcy judge issued an opinion overruling the opinion issued by the first bankruptcy judge.

The court concluded that the automatic stay never applied to the City because it was not a debtor

and that, in any event, the stay terminated when the plan was confirmed and the assets of Brady

Gas were conveyed to the City.  In addition, the court held that its retention of jurisdiction under

the provisions of the plan to decide the issue of Appellant's damages resulting from the rejected

executory agreement did not result in the bankruptcy court having exclusive jurisdiction.

Instead, the court ruled that the bankruptcy court and the state court had concurrent jurisdiction.

The bankruptcy court held that, even though the state court's decision was clearly erroneous, the

judgment issued by the state court was nevertheless a final judgment and was entitled to full faith

and credit in the bankruptcy court.  Therefore, the bankruptcy court held that the Appellants were

barred from pursuing their proof of claim for damages and dismissed the adversary proceeding.

The Appellants in *Brady* appealed the bankruptcy court's decision to the district court,

which affirmed the bankruptcy court's order.  The Appellants then appealed to the Circuit Court

of Appeals for the Fifth Circuit.  The Fifth Circuit held that the bankruptcy court and the state

court had concurrent jurisdiction, and that the Appellants were bound by the decision of the state

court, even if its decision were incorrect, because the decision was entitled to full faith and credit

of the bankruptcy court under the provisions of the Full Faith and Credit Act (28 U.S.C. §1738).

Therefore, the Fifth Circuit affirmed the decision of the bankruptcy court's order dismissing the

Appellants' claim against Brady Gas and its successor in interest, the City of Brady, Texas.

The second case discussed in the Memorandum is *Callaway v. Benton*, 336 U.S. 132, 69

S. Ct. 435 (1949).  McAlister first notes that *Callaway* pre-dates enactment of the Bankruptcy

Code.  It involves a bankruptcy case filed and administered under the Bankruptcy Act.  In

addition, it involves the bankruptcy proceeding of a railroad.  Further, the facts, circumstances

and issues involved in *Callaway* have no similarity to those involved in W&M's case.  The

discussion and rulings of the Supreme Court in *Callaway* have little, if any, relevance to this

Court's consideration of the issues presented by Wyatt's Joint Motion.

The debtor in *Callaway* was Central of Georgia Railway Company.  It leased and

operated property owned by South Western Railroad Company (the "Lessor").  The Lessor was

not in bankruptcy.  Under the debtor's plan of reorganization, which was promulgated by the

Interstate Commerce Commission and approved by the district court, the Lessor was given the

option of selling its property to the reorganized debtor for a fixed amount, or of having the lease

"disaffirmed" by the debtor and having the leased property returned to the Lessor.  Following

approval of the plan, the Lessor's officers urged acceptance of the plan's offer by the Lessor's shareholders, and signified their intention of conveying the Lessor's property to the reorganized debtor if a ***majority*** of the Lessor's shareholders voted to accept the offer.  However, the laws of the state of Georgia, where the Lessor was incorporated and where its principal office was located, required ***unanimous*** approval of the shareholders when the entire assets of a company were to be sold.

Benton and other shareholders filed an action in state court seeking an injunction against the Lessor, ifs officers and directors, restraining them from selling the Lessor's property if a "mere majority" of the Lessor's shareholders voted to accept the offer contained in the debtor's plan.  Before a decision was reached in the state court action, Callaway, as trustee for the debtor, filed a petition in the bankruptcy court asking that Benton and the other shareholders who filed the state court action be enjoined from further prosecution of the state court action.  The bankruptcy court issued a temporary restraining order prohibiting Benton and the other state court plaintiffs from further prosecuting the state court action.  Thereafter, the state court, acting on its own motion, entered an interlocutory injunction restraining the officers and directors of the Lessor from selling the Lessor's property on grounds that such a sale under Georgia law requires unanimous consent of the shareholders.  Callaway then brought the state court's injunctive order to the attention of the bankruptcy court and, after further proceedings, the federal district court granted a permanent injunction restraining further prosecution of the state court action and declaring the state court's temporary injunction null and void as "in excess of its jurisdiction." The district court's opinion was appealed to the Court of Appeals for the Fifth Circuit, which reversed the district court.  The Supreme Court granted *certiorari*.

The Supreme Court stated that the Bankruptcy Act gave the bankruptcy court exclusive jurisdiction of the debtor and its property.  Further, the interest of the debtor in the Lessor's property was a leasehold estate and, therefore, the bankruptcy court had exclusive jurisdiction over any controversy involving that leasehold estate.  However, the Court found that the question in *Callaway* did not involve the debtor's leasehold estate.  It involved ownership of the property that was the subject of the lease – *i.e.*, the issue in *Callaway* involved the Lessor's reversionary interest in the fee.  The Court ruled that the controversy which was initiated in the state court, and which the district court decided after enjoining the state court proceeding, required a determination of the rights of the stockholders of the non-bankrupt Lessor to sell their reversionary interest in the property.  The Court ruled that the interest involved in the controversy was not part of the property of the debtor, and that the district court's assertion of exclusive jurisdiction was error.  *See Id*. at 142-43

The Court further stated:

The bankruptcy power unquestionably gives the [Interstate Commerce] Commission and court, working within the framework of the [Bankruptcy] Act, full and complete power not only over the debtor and its property, but also, as a corollary, over any rights that may be asserted against it.  These rights may be altered in any way thought necessary to achieve sound financial and operating conditions for the reorganized company, subject to the requirements of the Act. The purchase of formerly leased properties does not involve rights asserted against the debtor, however.

This Court has said that "The exclusive jurisdiction granted the reorganization court by [Section] 77, [subsection] a is that which bankruptcy courts have customarily possessed.  [citation omitted]

We conceive the jurisdiction asserted by the district court over a solvent lessor not in reorganization to be an extension of these traditional powers not justified by any provisions of the Bankruptcy Act.

*Id*. at 146.  (internal footnotes omitted)  The Court ultimately concluded that the bankruptcy court erred in enjoining the state court proceeding leading to a determination of the requirements

of Georgia law with respect to sale of the entire assets of the Lessor.  The Court noted that the

issue was already in litigation in the state court before it was first raised in federal court, that the

controversy did not involve property of the debtor within the jurisdiction of the bankruptcy court,

and that the assertion of jurisdiction by the state court was not inconsistent with the provisions of

the Bankruptcy Act. *See Id*. at 150-51  Accordingly, the Supreme Court affirmed the Fifth

Circuit's reversal of the district court's order that enjoined further proceedings in the state court.

As stated above, neither *Brady* nor *Callaway* has any relevance to the issues presented in

the instant case, and particularly to the issues presented to this Court by Wyatt's Joint Motion.

Clearly, the decisions in these two cases do not provide any support for the relief requested by

Wyatt's Motion.  The Motion must be denied.

## Request for Relief

McAlister respectfully requests that the Motion be denied, and that this Court grant

McAlister such other and further relief as the Court deems to be appropriate.


Dated:  May 17, 2010


Respectfully Submitted,

MARY McALISTER


By:  /s/  Lawrence E. Allison, Jr.
        One of Her Attorneys

OF COUNSEL:

Christopher A. Shapley (MSB #6733)
Lawrence E. Allison, Jr. (MSB #1534)
Joseph A. Sclafani (MSB #99670)
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Post Office Drawer 119
Jackson, MS  39205
Telephone: 601-948-3101
Facsimile: 601-960-6902
E-mail: cshapley@brunini.com
E-mail: lallison@brunini.com
E-mail: Jsclafani@brunini.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney for Mary McAlister, certify that I have this day caused the above and foregoing pleading or other document to be filed electronically through the Court's ECF system, and that it was served electronically on all parties enlisted to receive service in this case electronically.

I further certify that I have also caused it to be separately served by electronic mail on the following persons:

> Vann F. Leonard
> P. O. Box 16026
> Jackson, MS  39236-6026
> E-mail:  vfllaw@bellsouth.net
>
> Derek Wyatt
> Wyatt Law PLLC
> 102 Northlake Lane
> Madison, MS 39110
> E-mail: dwyatt@wyattlawpllc.com
>
> Eileen N. Shaffer
> 401 E. Capitol Street, Suite 316
> P. O. Box 1177
> Jackson, MS  39215-1177
> E-mail: enslaw@bellsouth.net
>
> Stephen Smith
> 5 Old River Place, Suite 107
> Jackson, MS  39202-3449
> E-mail: trustee1@smithcpafirm.com
>
> Ronald H. McAlpin
> Assistant U.S. Trustee
> A. H. McCoy Federal Building, Suite 706
> 100 W. Capitol Street, Suite 706
> Jackson, MS 39269
> E-mail:  Ronald.McAlpin@usdoj.gov

THIS the  _17th_  day of May, 2010.


  /s/  Lawrence E. Allison, Jr.